Percy TATE, Appellant,

v.

Patsy Brashier TATE, Appellee.

No. 08–99–00006–CV.

Court of Appeals of Texas,
El Paso.

Aug. 3, 2000.

David W. Lindemood, Brockett & Lindemood, Midland, for Appellant.

Sylvia A. Chavez, Midland, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

---

*O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

In this appeal from a final decree of divorce, the only issue before us is whether certain assets were properly characterized as the separate property of Patsy Brashier Tate. We affirm.

## FACTUAL SUMMARY

Patsy and Percy Tate were the only witnesses to testify during their divorce proceeding which was tried to the bench. Because the Tates have no minor children, the only issue presented was the division of marital property. Percy disputes the trial court's order confirming that certain assets were Patsy's separate property. The assets in question include a brokerage account at Salomon Smith Barney and $8,000 in travelers' checks.

The record reflects that the brokerage account was originally opened at Shearson Lehman Brothers with the funds of Patsy's father, John Brashier. Patsy helped her father open the account and her name appeared on the account as a joint tenant with the right of survivorship. In September 1991, Mr. Brashier died and Patsy became the sole owner of the account. Sometime between April 30, 1993 and August 28, 1994, Patsy became concerned about the fact that the account was in her name only. She obtained a signature card and had Percy sign it. Thereafter, Percy's name appeared on the account as a joint tenant with right of survivorship. Patsy testified that she decided to add Percy as a second signatory so that he could manage the account in the event she became incapacitated, or so that he would inherit it if she were to die. She and Percy did not discuss the matter and she did not intend to make a gift to Percy.

The record contains seven monthly statements from the brokerage account. The earliest statement available reflects that the original Shearson Lehman Brothers account had a net value of $101,631.69 on February 29, 1992. At that time, the names on the account were John Brashier, deceased, and Patsy Brashier Tate. By the time of trial, the account had been transferred from Shearson Lehman Brothers to Salomon Smith Barney, and had a net

value of $50,172.60. After Mr. Brashier's death, Patsy received and reviewed all of the monthly statements, and she was the only one who wrote checks on the account. Patsy wrote checks to cover her living expenses, taxes, insurance, and gifts she bought her children and grandchildren. She also wrote a check for $9,000; $1,000 was taken in the form of cash, and the other $8,000 put into travelers' checks. Neither party made any deposits of community funds into the brokerage account.[1] On appeal, Percy complains that the evidence is insufficient to support a finding that the brokerage account and travelers' checks are Patsy's separate property because she failed to trace the assets she inherited from her father.

## CHARACTERIZATION OF ASSETS

This appeal proceeds without the benefit of findings of facts and conclusions of law. We therefore presume that the trial court made all necessary findings to support its judgment,[2] and we will affirm based upon any legal theory finding support in the evidence. *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex.App.—Austin 1999, no pet.).

### The Presumption

All property on hand at the dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a)(Vernon 1998). It is a rebuttable presumption, requiring a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence. TEX.FAM.CODE ANN. § 3.003(b). Property owned before marriage, or acquired during marriage by gift, devise or descent, is separate property. TEX.FAM.CODE ANN. § 3.001. Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX.FAM.CODE ANN. § 3.002.

### Standards of Review

#### Legal Sufficiency

A legal sufficiency challenge to a fact-finding requiring clear and convincing evidence does not mandate an alteration in the standard of review. *In re B.R.*, 950 S.W.2d 113, 118–19 (Tex.App.—El Paso 1997, no pet.). A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are basically two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *See Kimsey v. Kimsey*, 965 S.W.2d 690, 699–700 (Tex.App.—El Paso 1998, pet. denied). The latter applies here. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the challenged finding and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). If any probative evidence supports the fact

---

1. Patsy made one deposit after her father's death which consisted of the proceeds from a lawsuit that Mr. Brashier, and other former employees, recovered from Chevron Corporation.

2. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

finder's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Kimsey*, 965 S.W.2d at 700; *Parallax Corp.*, 910 S.W.2d at 89.

### Factual Sufficiency

"Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. When the party having the burden of proof complains of an unfavorable finding, the point of error should allege that the findings "are against the great weight and preponderance of the evidence." The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *Kimsey*, 965 S.W.2d at 700; *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ). Once again, the latter applies here.

When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of factual sufficiency review. *In re B.R.*, 950 S.W.2d at 118–19. After considering all of the evidence, we must determine not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. We will sustain an insufficient evidence point of error only if the fact finder could not have reasonably found the fact was established by clear and convincing evidence. *In re B.R.*, 950 S.W.2d at 119; *see also, Neiswander v. Bailey*, 645 S.W.2d 835, 835–36 (Tex.App.—Dallas 1982, no writ); *Mezick v. State*, 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ); *In the Interest of P.S. and L.S.*, 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ).

Even applying the heightened standard of review, a factual sufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re B.R.*, 950 S.W.2d at 120–21; *Parallax Corp.*, 910 S.W.2d at 89; *Tseo v. Midland American Bank*, 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied). The reviewing court cannot substitute its conclusions for those of the fact finder. If sufficient competent evidence of probative force exists to support the finding, it must be sustained. *In re B.R.*, 950 S.W.2d at 121; *Parallax Corp.*, 910 S.W.2d at 89; *Tseo*, 893 S.W.2d at 26; *Texas Tech University Health Sciences Center v. Apodaca*, 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied). We may not interfere with the fact finder's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied). Where conflicting evidence is present, the fact finder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d at 121; *Parallax Corp.*, 910 S.W.2d at 90.

### Abuse of Discretion

An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions. Most of the appealable issues in a family law case are evaluated against an abuse of discre-

tion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. While the appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances, that is not enough. If, for example, an appellant is challenging the sufficiency of the evidence to support the court's valuation of a particular asset, he must also contend that the erroneous valuation caused the court to abuse its discretion in the overall division of the community estate.[3] Here, however, we are asked to review an alleged characterization error. We must determine not only whether the trial court's finding of separate property is supported by clear and convincing evidence, we must also determine whether the characterization error, if established, caused the trial court to abuse its discretion. These two prongs require first, a showing of error, and second, a showing that the error was harmful. Tex.R.App.P. 44.1(a)(1)(no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error com-

plained of probably caused the rendition of an improper judgment). In other words, Percy's argument should be that because of the trial court's characterization error, the size of the community pie was underestimated; as a result, the division of the community estate was manifestly unjust and Percy was served too small a slice.

### Variations on a Mischaracterization Theme

■ Three fact scenarios establish the appropriate structure of an appellant's characterization contention. First, suppose Wife claims Blackacre is her separate property and Husband claims the asset is community property. Second, suppose the trial court characterizes it as community property and awards it to Wife. On appeal, Wife must establish error; she must challenge that the characterization is against the great weight and preponderance of the evidence [a factual sufficiency complaint] or that separate property status was established as a matter of law [a legal sufficiency complaint]. She must also establish that the characterization error was harmful—because of the mischaracterization,

---

3. As an example, we revisit the hypothetical we crafted in *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 at n. 3 (Tex.App.—El Paso 1998, no pet.). Suppose the parties dispute the value of Husband's business which is operated as a sole proprietorship. Wife contends it has a value of $30,000 while Husband values it at $10,000. For purposes of this example, we will assume that Wife's valuation expert improperly includes personal goodwill. *See Hirsch v. Hirsch*, 770 S.W.2d 924 (Tex.App.—El Paso 1989, no writ)(Goodwill is not to be included or considered when placing a value on a professional corporation unless it can be determined first, that the goodwill exists independently of the personal ability of the professional person, and second, that if such goodwill does exist, it has a commercial value in which the community estate is entitled to share.). We will also assume that the trial court erroneously overrules Husband's objection and makes a specific fact finding that the

business has a value of $30,000. On appeal, Husband contends that the trial court erred in admitting Wife's expert's testimony, and had it been properly excluded, there was no evidence to support a valuation finding of $30,000. While an appellate court would likely agree, that is merely the first hurdle. Husband must still demonstrate that the trial court abused its discretion in dividing the community estate. Even if the evidence is insufficient to support the court's value of $30,000, that valuation error may not constitute an abuse of discretion in the ultimate distribution of a $300,000 estate [the error representing ten percent of the total community estate], but it may well constitute an abuse of discretion in the division of a $100,000 estate [the error representing nearly a third of the community estate], depending upon the equities justifying a disproportionate division.

the overall division of property constitutes an abuse of discretion. *In re Marriage of Morris,* 12 S.W.3d 877, 884 (Tex.App.—Texarkana 2000, no pet. h.)(mere mischaracterization of separate property as community property does not require reversal; it is appellant's burden to prove that any disparity in the division was caused by the mischaracterization of property and that it was of such substantial proportions that it constituted an abuse of the trial court's discretion); *Magill v. Magill,* 816 S.W.2d 530, 533 (Tex.App.—Houston [1st Dist.] 1991, writ denied)(accord).

Now suppose that given the same fact pattern, the trial court characterizes Blackacre as Wife's separate property and awards it to her. This time, Husband appeals. He must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization. He must also conduct a harm analysis—because of the mischaracterization, the overall division of property constitutes an abuse of discretion. *Vandiver v. Vandiver,* 4 S.W.3d 300, 302 (Tex.App.—Corpus Christi 1999, pet. filed)(mischaracterization of community property as separate property is not reversible unless the mischaracterization had more than a *de minimus* effect on the just and right division).

It is only in the third scenario that reversible error exists as a matter of law. In this example, Wife claims Blackacre is separate property and Husband claims it is community property. The trial court characterizes it as community property and awards it to *Husband.* If Wife can establish that Blackacre is her separate property, it is unnecessary to show harm because divestiture of separate property is

reversible error. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977); *In re Marriage of Morris,* 12 S.W.3d at 881. In this singular instance, there is no need to demonstrate that the overall property division constitutes an abuse of discretion.

### Assuming Mischaracterization Occurred, Was it Harmful?

The circumstances of the Tate divorce fall into the second of the three categories we have outlined. In his two points of error, Percy complains that there is "no evidence" or in the alternative "insufficient evidence" to support a finding that the brokerage account and travelers' checks were Patsy's separate property. He argues that Patsy failed to clearly identify any particular assets in the brokerage account at the time of her father's death and that she failed to trace the assets on hand at the time of divorce to the assets she allegedly inherited. Assuming without deciding that his contentions are correct, Percy's arguments nevertheless fail. He has not attempted to demonstrate how the purported mischaracterization caused the trial court to abuse its discretion or that it had more than a *de minimus* impact on a just and right division of the community estate. In short, he has wholly failed to conduct a harm analysis. Our review of the record indicates that no harm can be shown.

 Although we do not have the benefit of formal findings of fact and conclusions of law, we do have a detailed final decree of divorce which confirms Patsy's and Percy's separate property and which indicates a value for the bulk of the assets.[4] Additionally, the record contains

---

4. Findings of fact and conclusions of law need not be in any particular form as long as they are in writing and are filed of record. *Hamlet v. Silliman,* 605 S.W.2d 663, 664 (Tex.

Civ.App.—Houston [1st Dist.] 1980, no writ). It is permissible for the trial court to list its findings in a letter to the respective attorneys, as long as the letter is filed of record. *Villa*

Petitioner's Exhibit 9,[5] and Respondent's Exhibit 4,[6] which fill in most of the gaps

*Nova Resort, Inc. v. State,* 711 S.W.2d 120, 124 (Tex.App.—Corpus Christi 1986, no writ). Oral statements as to findings made by the judge on the record will not be accepted as findings of fact. *In re W.E.R.,* 669 S.W.2d 716 (Tex.1984); *Stevens v. Snyder,* 874 S.W.2d 241, 243 (Tex.App.—Dallas 1994, writ denied); *Giangrosso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Ikard v. Ikard,* 819 S.W.2d 644, 647 (Tex.App.—El Paso 1991, no writ). Nor may the court have those statements prepared as a reporter's record and filed as findings of fact and conclusions of law. *Nagy v. First National Gun Banque Corporation,* 684 S.W.2d 114, 115–16 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

Historically, while it was preferable to list the findings of fact separately from the conclusions of law, and the intermixing of factual and legal conclusions was not generally approved, it was not reversible error absent a showing of harm to the appellants. Thus, the rule requiring the findings and conclusions to be stated separately was considered to be directory. *Longoria v. Greyhound Lines, Inc.,* 699 S.W.2d 298, 304 (Tex.App.—San Antonio 1985, no writ); *Hill v. Sargent,* 615 S.W.2d 300, 302 (Tex.Civ.App.—Dallas 1981, no writ). There was a divergence of opinion as to whether specific findings of fact which were contained within a decree, such as specific factors considered with regard to a disproportionate division of the estate or specific findings as to values, qualified as formal findings of fact and conclusions of law. *See Cottle v. Knapper,* 571 S.W.2d 59, 64 (Tex.Civ.App.—Tyler 1978, no writ)(findings contained within the decree are valid despite the fact that they are not contained in a separate document). The inclusion of the findings in the order did not preclude a request for separate findings and conclusions. *See also, Juan A. and Patricia A. v. Dallas County Child Welfare,* 726 S.W.2d 241 (Tex.App.—Dallas 1987, no writ)(where findings and conclusions are incorporated into a judgment, even when no request has been made, they are treated as findings of fact and conclusions of law filed in accordance with Rule 296). For a contrary result, *see City of Houston v. Houston Chronicle Publishing Company,* 673 S.W.2d 316 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Jones v. Jones,* 641 S.W.2d 342, 344 (Tex.App.—Corpus Christi 1982, no writ) and *Gonzalez v. Cavazos,* 601 S.W.2d 202, 203 (Tex.Civ.App.—Corpus Christi 1980, no writ)(all holding that recitations in the judgment cannot be considered as a substitute for separately filed findings and conclusions). Thus, they provide no basis for attack by a losing party on appeal.

An entirely new Tex.R.Civ.P. 299a was effectuated in 1990 by the Supreme Court's rule amendments. It provides that findings of fact are to be separately filed and not recited in the judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. As a result of the rule change, findings of fact that are recited in a judgment cannot form the basis of a claim on appeal. Two cases have addressed the proper construction of this rule. In *Hill v. Hill,* 971 S.W.2d 153 (Tex.App.—Amarillo 1998, no pet.), the issue was whether findings contained in a judgment could be used to support a claim on appeal although the trial court made separate findings at the request of a party. The court determined that if there is no conflict between separate findings of fact and findings contained in the judgment, those contained in the judgment should be given effect. *Id.* at 155–56. In *Frommer v. Frommer,* 981 S.W.2d 811, 814 (Tex.App.—Houston [1st Dist.] 1998, no pet.), the appellant had failed to request formal findings and attempted to rely on certain findings contained within the judgment. Rejecting his claim, the court held, "[W]hile the propriety of findings of fact and conclusions of law in judgments was once a matter of debate, in 1990 the Texas Supreme Court ended the debate once and for all." *Id.* at 814.

Here, the record indicates that the decree of divorce was drafted by Patsy's attorney and that she filed a formal motion requesting that the trial court sign it. The decree as drafted included the specific findings on characterization and valuation. We therefore are of the opinion that Patsy has waived any complaint concerning the invalidity of findings recited within the decree, and accordingly, we include them in our analysis.

5. PX 9 is a composite inventory revealing Patsy's itemization of assets together with her characterization and valuation of those assets.

6. RX 4 is a composite inventory indicating Percy's itemization of assets together with his characterization and valuation of those assets.

left in the final decree. We can thus analyze the extent of the community estate, the valuation of the estate, and the percentage distribution to the parties.

### Property Awarded to Patsy

By virtue of the final decree of divorce, Patsy was awarded the following community property:

| Asset | Value |
|---|---|
| 2210 Cimmaron, Midland, Texas | $ 65,000 |
| Itemized household goods and furnishings | $ 5,080 [7] |
| Clothing, jewelry and personal effects | Unvalued |
| Norwest Bank Account # 7403065707 | $ 500 |
| IRA account at Exxon Shareholder Investment Program # 0806957–0001 | $ 20,549 |
| Policies of life insurance insuring her life | Unvalued |
| 3000 shares of Exxon stock, Certificate # V400583 | $180,000 |
| 18 shares of Exxon stock, Certificate # V095088 | $ 1,080 |
| 250 shares of Oklahoma Gas & Electric stock, Certificate # NX120782 | $ 12,500 |
| One-half of Merrill Lynch Account # 506–15756 | $ 48,272 |
| Undivided one-half interest in Pecos County property | Unvalued |
| One-half of the advantage miles through Citibank Advantage Account 4128003125334876 | Unvalued |
| **Total Assets** | **$332,981** |

| Liability | Indebtedness |
|---|---|
| Dillard's Account # 08–874–711–8 | $ 43 |
| Debts incurred solely by Patsy after the date of separation | $ 13,800 [8] |

Ad valorem taxes, liens and assessments on property awarded Patsy — Unvalued

**Total Liabilities** — $ 13,843

**Net Community Property Awarded to Patsy** — $319,138

### Property Awarded to Percy

By virtue of the final decree, Percy was awarded the following community property:

| Asset | Value |
|---|---|
| 809 Canonero, Midland, Texas | $150,000 |
| Itemized household goods and furnishings | $ 2,325 |
| Clothing, jewelry and personal effects | Unvalued |
| Benchmark Credit Union checking account # 4855200–00186 | $ 1,124 |
| Retirement benefits from Exxon Company, USA | $ 38,248 [9] |
| Policies of life insurance insuring her life | Unvalued [10] |
| 3000 shares of Exxon stock, Certificate # N449865 | $180,000 |
| 18 shares of Exxon stock, Certificate # H243722 | $ 1,080 |
| One-half of Merrill Lynch Account # 506–15756 | $48,272 |
| 1996 Buick Park Avenue | $ 22,000 |
| Undivided one-half interest in Pecos County property | Unvalued |
| One-half of the advantage miles through Citibank Advantage Account 4128 0031 2533 4876 | Unvalued |
| **Total Assets** | **$ 443,049** |

| Liability | Indebtedness |
|---|---|
| Mortgage on 809 Canonero | $ 112,519 |
| GMAC lien on 1996 Buick Park Avenue | $ 21,177 |
| Benchmark Credit Union Account # 4855200–00197 | $ 2,000 |
| Citibank Advantage Visa Account # 4128 0031 2533 4873 | $ 2,032 |
| Debts incurred solely by Percy after the date of separation | Unvalued [11] |

7. For the most part, the Tates have agreed on values for the household goods and furnishings. Certain items were inventoried with a value stated as "unknown" or "sentimental." To the extent Percy valued items that Patsy did not value, or to the extent that Percy's values differed from Patsy's, we have for the purpose of our analysis utilized Percy's values.

8. The only testimony addressing debts incurred by Patsy after separation related to attorneys' fees in the amount indicated.

9. Percy offered into evidence RX 2, which summarized how he valued the Exxon annuity. Patsy's attorney objected on the basis that Percy was not an expert actuary and the objection was sustained. The $38,248 value

was also included on Percy's inventory, RX 4; however, that exhibit was admitted "with the redaction of that amount as to the value." Nevertheless, for consistency, we utilize Percy's value in our analysis.

10. Although Patsy "valued" the policies in her inventory, she did not indicate whether the amounts listed were face value or cash surrender value, and we decline to speculate. Percy did not list the policies in his inventory.

11. Percy testified that he was unaware of any other debts that the parties had incurred. He did not testify that he owed any legal fees; instead, he testified that he had paid his legal fees from the Merrill Lynch account since the date of separation. Similarly, his inventory

| | |
|---|---|
| Ad valorem taxes, liens and assessments on property awarded Percy | Unvalued |
| 1997 federal income tax liability | $ 1,109 |
| **Total Liabilities** | **$ 138,837** |
| **Net Community Property Awarded to Percy** | **$ 304,212** |

Based on this analysis, the net value of the community estate was $623,350, which was divided between the parties with Patsy receiving 51 percent and Percy receiving 49 percent. If the brokerage account funds [$50,172] and the travelers' checks [$8,000] are added to the community and awarded to Patsy, the net value of the community estate is $681,522; the resulting percentage distribution is 55 percent awarded to Patsy and 45 percent awarded to Percy. The characterization error, if any, represents 8.5 percent of the total estate.

### Disproportionate Division

The Family Code requires that the trial court divide the estate of the parties in a manner that is just and right having due regard for the rights of each party. TEX.FAM.CODE ANN. § 7.001. There is no requirement that the court effectuate an equal division. *Vandiver,* 4 S.W.3d at 302, *citing Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). The courts have determined a number of factors which may justify a disproportionate division. *Murff,* 615 S.W.2d at 698–99. Without the benefit of findings of fact, Percy cannot establish whether the court intended to make a nearly-equal division, or whether it determined that a disproportionate division was justified, and if so, what factors were considered. Patsy specifically pled that the equities justified a disproportionate division, alleging the following factors:

- fault in the breakup of the marriage;
- benefits the innocent spouse may have derived from the continuation of the marriage;

does not reveal that any legal fees were out-

- ages of the spouses;
- need for future support;
- nature of the property involved in the division;
- attorneys' fees to be paid; and
- the size and nature of the separate estates of the spouses.

### Fault

As grounds for divorce, Patsy pled both insupportability and cruel treatment by Percy. However, the divorce was granted solely on the basis of insupportability. Further, there is no evidence in the record concerning fault in the breakup of the marriage, and accordingly, no testimony appears concerning the benefits the innocent spouse would have derived from a continuation of the marriage.

### Age

The record reveals that as of the date of trial, Patsy was 68 years of age and Percy was 77. Their marriage had spanned some 47 years.

### Need for Future Support

Percy was receiving Social Security benefits of $800 per month and retirement benefits through Exxon of $1,848 per month. Patsy was receiving Social Security benefits of $375 per month. By virtue of the property division, Percy would additionally receive Exxon stock dividends of $412; Patsy would receive Exxon stock dividends of $412, Oklahoma Gas & Electric stock dividends of $55, and rental income of $825. The rental income was derived from the Cimarron property, which had at one time been the marital residence. The home became rental property when the parties built the Canonero townhouse in 1982.

standing.

When the parties separated, Patsy stayed with various relatives, first in Monahans and later in Arkansas. She briefly rented a small home in Midland, but after a month, she returned to Arkansas to live with her aunt. She asked the court to award her the rental property, which she intended to sell in order to purchase a home and a new car.[12] Thus, post-divorce, Patsy's income would be limited to $842, while Percy would have income of $3,060.

Percy took the position in the trial court that his monthly expenses included a house note of $782, common area maintenance of $135, pool maintenance of $100, and a car note of $477, leaving disposable income of $1,566. Giving him the benefit of the doubt in this regard, his income is still nearly twice that of Patsy's. Further, the trial court may not have believed it necessary that he continue to reside in the 3,000 square foot marital townhome.[13]

### Attorneys' Fees

As we have noted, Patsy testified to accumulated attorneys' fees in the sum of $13,800. Percy indicated he had paid certain legal fees during the period of separation, but never testified to any outstanding fees which he had incurred.

### Size and Nature of Separate Estates

Both parties claimed separate property. The trial court confirmed Patsy's separate property, including the following:

One quilt

$8,000 in travelers' checks

Mink coat

Diamond ring

1985 Ford Crown Victoria

Salomon Smith Barney Account # 718–15213–16.

Utilizing the trial court's values where provided and otherwise accepting Percy's values, Patsy's separate estate totaled $73,602. The trial court also confirmed Percy's separate property as including:

Two quilts

12 gauge shotgun

.38 caliber pistol

.22 rifle

Norwest Bank Account # 7405008794 [Percy Tate Farm Account]

Undivided ¼ interest in Tate Farm, Floydada County, Texas

Percy listed the value of the farm as unknown; utilizing his values for the remainder of the assets, his separate estate totaled $2,423.

### CONCLUSION

■■■ In the absence of an issue concerning divestiture, we can draw the following conclusions. If property is mischaracterized and the mischaracterization affects the just and right division of the community estate, we must remand the entire community division. *Evans v. Evans*, 14 S.W.3d 343, 345 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.), *citing Robles v. Robles*, 965 S.W.2d 605, 621 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). If the mischaracterization has a *de minimus* effect on the division, then there has been no showing of an abuse of discretion. *See id.* It is only when the court mistakenly characterizes property that is of such magnitude that it materially affects the just and right division of the community estate that reversible error is demonstrated. *Id. citing In re Marriage of Taylor*, 992 S.W.2d 616, 621 (Tex.App.—Texarkana 1999, no pet.).

---

12. At the time of trial, Patsy was still driving a 1985 Ford Crown Victoria which had belonged to her father.

13. The townhouse is located in a gated community and features three bedrooms, three and a half baths, a den, and private swimming pool.

The trial court has broad discretion in effectuating the division of property on divorce and the division effectuated here was nearly equal. Yet in awarding Patsy 51 percent of the community estate, the trial judge may well have taken into consideration the $50,172.60 in the brokerage account and the $8,000 in travelers' checks which had been confirmed as her separate property and which were available for her future support. It is equally plausible that had the trial court characterized those assets as community property, the estate would have been divided disproportionately, given Patsy's established need for future support. In the absence of findings of fact and conclusions of law, Percy cannot show otherwise. On this record, we cannot conclude that a comparative 55 percent to 45 percent distribution in Patsy's favor constitutes an abuse of discretion. The characterization error, if any, is accordingly harmless. We affirm the judgment of the trial court.