# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00281-CV

**Arthur M. Evans, Jr., Appellant**

**v.**

**Della M. Evans, Appellee**

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT
NO. 98-D-276, HONORABLE C. FRED SHANNON, JR., JUDGE PRESIDING**

This dispute arises out of a divorce proceeding initiated by appellant Arthur M. Evans, Jr. Arthur challenges the property division made in the final decree of divorce. By three issues, he attacks the trial court=s characterization of certain assets and its division of the community estate. We will overrule his issues and affirm the trial court=s judgment.

## FACTUAL BACKGROUND

Arthur and Della Evans were married on September 19, 1997. They separated on August 11, 1998, after about eleven months of marriage. Arthur has owned and operated his own tile business, which is the primary source of his income, since 1966. Della=s wages were her only source of income. The parties did not have a joint bank account during the marriage, nor did they purchase any real property.

Arthur, however, had five bank accounts in his name before he and Della were married and opened another account after they married. This dispute involves the trial court=s division of the funds in these accounts.

Arthur filed for divorce on August 14, 1998, and on December 17, the trial court held a hearing on temporary orders and ordered Arthur to pay Della $500 per month in temporary support beginning January 1, 1999, plus moving expenses and interim attorney=s fees. A trial setting was obtained for June 1999 but was rescheduled after the assigned judge discovered he had a potential conflict with Della=s counsel. Thereafter, Arthur refused to continue paying temporary support. The parties ultimately proceeded to a bench trial on September 15, 2000, during which the trial court also considered Della=s motion to enforce the temporary orders. In the final decree of divorce, the trial court awarded each party the property in his or her possession and awarded Della $36,188.67 plus interest. Of that judgment, $8,000 was for unpaid temporary support; the remaining $28,188.67 was found to be Della=s share from the disputed accounts. Arthur requested findings of fact and conclusions of law, which were not filed. Arthur now appeals.

## DISCUSSION

By his first issue, Arthur argues that the trial court erred in characterizing as community property gross proceeds from his tile business, which were held in various accounts, by improperly applying community property tracing principles.

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. *Austin v. Austin*, 619 S.W.2d 290, 292 (Tex. Civ. App.CAustin 1981, no writ). Separate property consists of property owned by a spouse before marriage, property acquired during

2

marriage by a spouse by gift or inheritance, and recovery for personal injuries suffered by that spouse during the marriage, with the exception of lost earning capacity during the marriage. Tex. Fam. Code Ann. ' 3.001 (West 1998). The party claiming separate property carries the burden of overcoming the community property presumption by clear and convincing evidence and must trace and clearly identify the property claimed. Tex. Fam. Code Ann. ' 3.003 (West 1998); *Smith v. Smith*, 22 S.W.3d 140, 144 (Tex. App.CHouston [14th Dist.] 2000, no pet.). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. ' 101.007 (West 1996). A trial court may not divest a spouse of his or her separate property in dividing property. *Cameron v. Cameron*, 641 S.W.2d 210, 220 (Tex. 1982); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977); *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.CAustin 1999, no pet.).

When, as here, the alleged error is the trial court=s mischaracterization of separate property as community property, we must first determine whether the trial court=s finding is against the great weight and preponderance of the evidence (factual sufficiency complaint) or the separate property status was established as a matter of law (legal sufficiency complaint). *Tate v. Tate*, 55 S.W.3d 1, 6 (Tex. App.CEl Paso 2000, no pet.). Mere mischaracterization of separate property as community property, however, does not require reversal. *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex. App.CHouston [1st Dist.] 1991, writ denied). The appellant must also prove that a disparity in the division was caused by the mischaracterization of such property and was so substantial as to constitute an abuse of the trial court=s discretion. *Id.* In other words, even if the trial court included separate property in its determination of the

**3**

value of the community estate, the trial court=s division of the community estate will not be reversed absent a showing of a substantial disparity in the division caused by the mischaracterization of the property.

The six accounts in dispute are as follows: (1) the Omni Bank Abusiness account,@ (2) the Omni Bank Asavings account,@ (3) the Omni Bank Ainsurance account,@ (4) the First Lockhart National Bank Amoney market account,@ (5) the AIRA account,@ and (6) the AWells Fargo business account.@ Arthur testified about the nature of these accounts, and Della introduced evidence of the balances in the accounts.

According to Arthur, he uses his Omni Bank business account Afor everything@; it is his main operating account. Arthur testified that he deposits funds for his tile jobs into this account and pays both business and personal expenses from the account. The beginning balance for this account at the time Arthur and Della were married was between $24,288 and $29,782.[1] The account=s lowest balance during the marriage was $595. At the time of trial, the balance was $18,070.

Arthur also has a savings account at the Omni Bank. The balance in this account at the time of marriage was between $60,467 and $61,089. When the parties separated, the account had a balance of between $56,154 and $63,283.[2] The balance at the time of divorce was $68,168. The account balance dipped to $55,300 during the marriage.

---

[1] Because the parties were married on September 19, 1997, we have included the balances for the beginning of September and the end of September.

[2] Because the parties separated on August 11, 1998, we have included the balances for the



beginning of August and the end of August.

The insurance account is Arthur=s third account at Omni Bank. According to Arthur, the sole purpose of this account is to pay for his life insurance policy. He deposits funds into the account from his business account, and the funds are automatically drafted from his account to pay his insurance premiums. The account had a beginning balance of $473. It dipped to $386 during the marriage, and had a balance of $2,364 by the time of the divorce.

The money market account is maintained at First Lockhart National Bank; Arthur testified that he deposits funds into this account from his business account. As of the date of Arthur=s marriage to Della, this account had a beginning balance of between $52,100 and $54,300. At the time the parties separated, the account=s balance was between $67,387 and $71,927. And at the time of trial, the balance was $77,252.

Arthur also has an IRA account at First Lockhart National Bank. He made annual $2,000 deposits into the IRA account from his business account. At the time he and Della were married, the account had a balance of $72,419. With the annual deposits and the accrual of interest, the balance grew to about $75,301 at the time of separation and $91,500 at the time of divorce.

The Wells Fargo business account is the only account that was opened during the marriage; it was opened primarily for business purposes, according to Arthur. He was anticipating Adoing a lot of work in the [Kyle] area@ and considering Aputting somebody over there to kind of run things in that area.@ So, he opened a bank account at the Wells Fargo Bank in Kyle to further those intentions. In opening the account, Arthur claimed to use A[j]ust incoming money I had in my business.@ The account had a beginning balance of $20,200 and a balance of $32,711 at the time of divorce.

**6**

Because Arthur commingled funds from his separate business accounts with his personal funds, all six bank accounts are presumed to consist of community property. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). In order to dispel the community property presumption, Arthur=s burden was to present proof illustrating that the separate funds he deposited were never withdrawn. *Hill v. Hill*, 971 S.W.2d 153, 158 (Tex. App.CAmarillo 1998, no pet.). This method of tracing relies on two more presumptions: (1) separate funds deposited in the account sink to the bottom, and (2) community funds are withdrawn first. *Id.* Della relied on these tracing principles and on the evidence of the bank account balances in arguing to the trial court that community assets should be determined by taking the difference between the balance in the accounts at the time of trial and the accounts=lowest balances during the marriage.

Arthur, on the other hand, testified that because of the nature of his business, it is impossible to determine his income by merely considering the balances in his accounts. The balances may not reflect substantial outstanding overhead expenses. Thus, Arthur proposed that the court refer to his income tax statements for a more accurate representation of his income. According to these statements, Arthur=s taxable income for the year 1997 was $32,297. He paid $11,344 in taxes, which results in a net income of $20,953, plus $2,000 that he deposited into his IRA account, totaling $22,953. In 1998, Arthur=s taxable income was $25,085, minus $8,555 in taxes, plus the $2,000 IRA deposit, totaling $18,540. Arthur=s taxable income in 1999 was $28,075; he paid $9,342 in taxes and again deposited $2000 into his IRA account, for a sum of $20,733. Arthur provided no other evidence of his income aside from his income tax statements.

The final decree of divorce awards Della a judgment of $36,188.67 against Arthur, $8,000 of which constitutes unpaid spousal support under the temporary orders. The remaining $28,188.67 represents Della=s share of the community property from the six bank accounts. The decree of divorce does not disclose the trial court=s method in calculating these figures. And the court did not file findings of fact and conclusions of law in relation to the property division.[3] Nonetheless, Arthur directs this Court to the trial court=s comments before the rendition of the divorce decree, explaining his method in determining the community estate:

> This is the way that I see it: With regard to the Omni business account, I think that I can allow only 14 percent of that as community. That would be $2,443.88. That represents the most recent year=s percentage of net profit on the operation of the business. The Wells Fargo account, $32,711, the same consideration applies. Fourteen percent is $4,579.54. With regard to the other accounts, that consideration does not apply.

[3] It appears from the clerk=s record that Arthur requested findings of fact and conclusions of law, but did not timely file his request. The trial court, however, concluded that Arthur did not timely receive notice of the final divorce decree. Therefore, because he had not received notice of the decree and because his request was filed before the trial court=s plenary jurisdiction expired, the trial court considered Arthur=s request for findings of fact and conclusions of law timely filed. Nevertheless, the only findings and conclusions filed by the trial court were those relating to Arthur=s failure to receive notice of the decree and the timely filing of his request for findings and conclusions. Arthur did not file a notice of past due findings of fact and conclusions of law in relation to his original request for findings and conclusions regarding the merits of the case. *See* Tex. R. Civ. P. 297.

The money market funds, I believe, represent a savings account. I think that the community portion of that account is $25,125. The IRA, I believe -- the community portion of that account is $19,081. The Omni savings account -- I believe that the community portion of that is $12,868. The insurance account -- I believe the community portion of that account is $1,978.

The total, therefore, of the funds on deposit which appear to be a part of the community estate, same being enhancements to the account since date of marriage and measured from the low point in those savings accounts is $66,077.34, the $66,077.34 representing community property.

There is an $8,000 arrearage to the spouse on a temporary support order. That should be paid from the community. That reduces the community balance, after payment, to $58,077.34. Of that amount, the husband is entitled to recover $1,500 on income tax payments and $200 on the hot check settlement. That reduces the community amount to $56,377.34.

. . . I think an equal division of the cash balance of $56,377.34 is appropriate.

Arthur=s complaints about the court=s calculations are two-fold. First, he argues that the trial court should have considered only his income tax statements in determining which funds are community assets. In the alternative, the trial court should have applied the fourteen percent multiplier to all of the accounts instead of only to the two business accounts. In essence, Arthur contends that the trial court=s characterization of the property is against the great weight and preponderance of the evidence. We disagree.[4]

---

[4] We note that even if Arthur=s assertion were correct and the trial court had mischaracterized his

separate property as community property, he would still have to prove that this mischaracterization resulted in a substantial disparity in the trial court=s division of the property so as to constitute an abuse of discretion. As previously stated, absent such a showing, we will not reverse the trial court=s judgment. *See Magill v. Magill*, 816 S.W.2d 530, 533 (Tex. App.CHouston [1st Dist.] 1991, writ denied).

We review the trial court's findings on characterization of property under a factual sufficiency standard in light of the proponent's burden of proof at trial. *Tate*, 55 S.W.3d at 5. Arthur's burden of proof at trial was to establish the separate nature of his property by clear and convincing evidence; thus, on appeal, we must consider all the evidence and determine whether the fact finder's failure to find in Arthur's favor is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Leal v. Texas Dep=t of Protective and Regulatory Servs.*, 25 S.W.3d 315, 320 (Tex. App.CAustin 2000, no pet.); *Tate*, 55 S.W.3d at 5. In doing so, we cannot substitute our conclusions for those of the fact finder. *Tate*, 55 S.W.3d at 5. Nor may we interfere with the fact finder's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses= testimony. *Id.*

Where no findings of fact and conclusions of law are filed, the reviewing court infers that the trial court made all findings necessary to support its judgment, and the trial court judgment will be affirmed on any legal theory supported by the evidence. *Wilkerson*, 992 S.W.2d at 722. We may not consider the trial court's comments as a substitute for findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984). Absent findings of fact and conclusions of law, there is no indication of how the trial court calculated community assets.

Even if we were to consider the trial court's comments, however, Arthur failed to satisfy his burden of tracing his separate property. Arthur testified that due to the nature of his business, it is impossible to determine which funds belong to his separate tile business. Arthur argues that he often transferred funds back and forth from his savings and money market accounts and operating accounts as his balances allowed and required for payment of his business and living expenses. He contends that just

**11**

because money goes into an account does not mean that it is earned income that should be classified as community property. Thus, according to Arthur, the Aonly solid evidence in the file, the income tax return, and [Arthur=s] testimony established this fact clearly.@

As previously stated, when separate and community funds are commingled in a manner defying segregation, it is presumed that the entire fund consists of community property. *McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex. App.CHouston [1st Dist.] 1995, writ denied). Once Arthur commingled his separate funds with community funds, presumptively, the character of those funds changed and became community funds. As the party attempting to overcome the community property presumption, Arthur was required to produce clear and convincing evidence of the transactions affecting the commingled accounts. *See McKinley v. McKinley*, 496 S.W.2d 540, 543-44 (Tex. 1973); *Welder v. Welder*, 794 S.W.2d 420, 434 (Tex. App.CCorpus Christi 1990, no writ). This he failed to do. Arthur made no attempt to trace any of the separate funds in the six accounts, or to identify any amount claimed to be his separate property. The only evidence provided by Arthur were his income tax statements. While these statements may have provided some evidence of his average taxable income during the years he was married to Della, they are inconclusive as to the nature of the funds deposited or withdrawn. Arthur offered no financial statements evidencing outstanding expenses or expected income. We cannot say that Arthur sustained his burden of overcoming the community property presumption by clear and convincing evidence.

In contrast, Della offered account summaries reflecting the balances in the six accounts from the date of marriage through the date of divorce in order to defeat the community property presumption and segregate Arthur=s separate property. It appears the trial court used these account summaries in

**12**

conjunction with Arthur=s income tax statements in determining the community funds. This is evidenced by the trial court=s determination that only fourteen percent of the balances in the two business accounts constitute community funds. We hold that the trial court=s assessment that $56,377.34 of the funds represent community property is not so against the great weight and preponderance of the evidence, in light of the presumption, as to be manifestly erroneous or unjust. Accordingly, we need not reach the issue of whether any mischaracterization of the property resulted in a substantial disparity in the division of the community estate. Arthur=s first issue is overruled.

By his second and third issues, Arthur argues that the trial court erred in failing to order reimbursement to his separate estate for funds used to pay community expenses.[5] He also argues that the trial court abused its discretion by failing to make a fair and equitable division of the parties= community property. Because he argues these two points together, we will address them together.

In granting a divorce, the trial court Ashall order a division of the estate of the parties in a manner that the court deems just and right.@ Tex. Fam. Code Ann. ' 7.001 (West 1998). The trial court enjoys broad discretion in dividing the property. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We will reverse only if we determine the trial court clearly abused its discretion. *Id*. A clear abuse of discretion

---

[5] Arthur also argues that the trial court erred in failing to properly account for funds as gross proceeds of a separately owned business rather than net divisible community property. Because we have already held that Arthur failed to provide evidence tracing those funds to his separate property, *i.e.*, his tile business, the trial court did not abuse its discretion in presuming those funds to be community property.

is shown only if the property division is manifestly unjust and unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). The party attacking the trial court=s property division bears the burden of demonstrating from evidence in the record that the division was so unfair and unjust as to constitute an abuse of discretion. *Wilson v. Wilson*, 44 S.W.3d 597, 600 (Tex. App.CFort Worth 2001, no pet.); *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.CHouston [1st Dist.] 1992, no writ).

A party claiming the right of reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). Arthur failed to plead reimbursement before the trial court; he cannot urge reimbursement for the first time on appeal. *See Gay v. Gay*, 737 S.W.2d 94, 96 (Tex. App.CEl Paso 1987, writ denied). Moreover, although Arthur provided some evidence of the amounts of community expenses and debts, he did not provide evidence demonstrating that his separate funds were used to pay those expenses and debts. Community funds are presumed to be withdrawn first. Thus, it is presumed that community expenses were paid with community funds absent clear evidence that there were no community funds in the accounts at the time the expenses were paid. *See Kuehn v. Kuehn*, 594 S.W.2d 158, 161 (Tex. Civ. App.CHouston [14th Dist.] 1980, no writ). Arthur has failed to present such clear evidence rebutting the presumption.

Arthur also argues that the community estate should have been determined according to the income and expenses up until the time the parties separated, and the trial court erred in considering the account balances at the time of the divorce. Because Arthur and Della remained married even after they separated until the date of their divorce, the property they continued to acquire between the date of separation and the date of divorce was still considered community property, unless Arthur could establish

**14**

that the property was his separate property. *Wilson*, 44 S.W.3d at 601. Arthur provided no evidence that any property acquired after the parties separated was separate property. Arthur=s final two issues are overruled.

## CONCLUSION

Having overruled all of Arthur=s issues, we affirm the trial court=s judgment.

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   June 21, 2002

Do Not Publish