COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





DEBORAH CUNNINGHAM,

                                    Appellant,

v.

HUGHES & LUCE, L.L.P. and
CHRISTOPHER L. DAVIS,

                                    Appellees. 

§
 
§
 
§
 
§
 
§

§


No. 08-07-00292-CV

Appeal from
68th District Court

of Dallas County, Texas

(TC # 04-04645-C)



 

 

 




O P I N I O N

            This is an appeal from a “trial within a trial.” Deborah Cunningham filed a legal malpractice
suit against Hughes & Luce L.L.P. and Christopher Davis, complaining of mistakes they made in
handling consumer litigation against a car repair facility. The jury found for the attorneys on all of
Cunningham’s claims. Finding no error, we affirm.
FACTUAL SUMMARY
The Classic Litigation
            Cunningham took her 2000 Mazda Protege to Classic BMW for repairs after an automobile
accident. A dispute arose concerning the length of time it took to repair the automobile and the
quality of those repairs. Cunningham refused to pay for the repairs and left the shop with her car. 
Classic filed charges for theft of services. A warrant was issued for her arrest and she was advised
to turn herself in. Cunningham retained Davis to represent her and signed a fee contract on February
21, 2001. Davis agreed to a reduced hourly rate of $155.00 plus: (1) 15% of any gross recovery
from $1.00 to $5,000.00; and (2) 12.5% of any gross recovery exceeding $5,001.00. On February
23, Cunningham turned herself into the police and was released a few hours later. Three days later,
Cunningham and Davis signed a new contract by which Davis would receive 33 1/3 % of any gross
recovery before suit was filed, 40% of any gross recovery after suit was filed, and 50% of any gross
recovery after appellate briefing. This second contract increased the attorney’s percentage recovery,
but eliminated Cunningham’s obligation to pay him an hourly fee. Davis then hired Robert Rubarts,
a partner in Hughes & Luce, L.L.P. , to assist him with Cunningham’s claims. 
            The attorneys filed suit against Classic for malicious prosecution, intentional infliction of
emotional distress, defamation, unfair debt collection practices, breach of warranty, and violations
of the Texas Deceptive Trade Practices/Consumer Protection Act (DTPA). In response to Classic’s
disclosure requests, the attorneys designated Darrell Jordan as an expert witness on attorneys’ fees. 
The response provided Jordan’s name, address, telephone number, and curriculum vitae. It also
indicated that Jordan would testify to the reasonable and necessary attorneys’ fees incurred by
Cunningham in the course of her lawsuit. 
            On February 13, 2002, Classic offered to settle for $45,000, of which $25,000 was
attributable to actual damages and $20,000 was attributable to attorneys’ fees, costs, and expenses. 
This offer was rejected. Classic then designated Marc Richman as its expert witness on attorneys’
fees. 
            Prior to trial, each party moved to exclude the testimony of the other’s expert. Davis and
Rubarts submitted an affidavit in which Jordan opined that a reasonable and necessary fee would
range from $300,000 to $500,000. The affidavit also detailed documents he reviewed in formulating
his opinion, including Hughes & Luce’s billing records. These billing records had not been provided
during discovery. The trial court, Judge Evans, ultimately excluded Jordan as an expert because the
attorneys’ discovery responses failed to disclose Jordan’s opinions, the sources he relied upon, and
the amount of fees sought. Unable to present expert testimony, Cunningham was not allowed to
submit a jury question on attorney’s fees. 
            The jury found that Classic maliciously prosecuted Cunningham as a result of malice or
fraud, that Classic defamed Cunningham with actual malice, and that Classic intentionally and
knowingly engaged in false, misleading, or deceptive acts or practices. The jury awarded
Cunningham actual damages of $588,744. The bifurcated trial then moved to Cunningham’s claim
for exemplary damages and additional damages under the DTPA. At this phase, Rubarts was
permitted to ask the jury to consider attorneys’ fees in its deliberations. The jury awarded
Cunningham $1,000,000 in additional damages.
The Fee Dispute
            Following trial, Appellees recommended that Cunningham settle her claims.


 Cunningham
initially refused but eventually agreed to settle for $1,200,000. The paperwork was completed and
Classic tendered payment to Appellees.


 From the $1,200,000, Appellees deducted expenses in the
amount of $37,424.60 and attorney’s fees of $480,000, representing 40% of the total recovery. A
check for $682,575.40 was hand-delivered to Cunningham on May 1, 2003.
            Several months later, Cunningham began questioning Davis as to why she had not recovered
her attorneys’ fees from Classic. On March 30, 2004, Cunningham sent a formal demand letter. 
Appellees filed suit on May 21, 2004, seeking a declaratory judgment that the fee contract was valid
and enforceable. Cunningham filed counterclaims for professional negligence, breach of contract,
breach of fiduciary duty, fraud, conversion, and violations of the DPTA. Appellees countered with
fraud claims of their own.
The Malpractice Litigation
            During the malpractice lawsuit, the trial court, Judge Stokes (presiding), granted a partial
summary judgment, holding that Judge Evans did not abuse his discretion by excluding Jordan’s
testimony. Immediately prior to voir dire, Appellees non-suited all of their claims against
Cunningham, with the exception of their declaratory judgment and quantum meruit claims. The trial
court then realigned the parties, with Cunningham becoming the plaintiff at trial. The jury rejected
all of Cunningham’s claims and found in favor of Appellees on every issue: 
            •          Appellees were not negligent and/or their negligence was not the proximate cause of
the occurrence in question (Question No. 1); 
 
            •          Appellees did not engage in an unconscionable action or course of action (Question
No. 4); 
 
            •          Appellees did not breach their fiduciary duties to Cunningham (Question No. 7); 
 
            •          Appellees did not convert funds belonging to Cunningham (Question No. 9); 
 
            •          Appellees did not commit fraud against Cunningham (Question No. 12); 
 
            •          The engagement agreement between Appellees and Cunningham was fair and
reasonable at the time of its inception (Question No. 16); and 
 
            •          Appellees performed compensable work for Cunningham with a reasonable value of
$289,298.23 and $228,126.37, respectively (Question Nos. 17 and 18).

The trial court rendered a take-nothing judgment and this appeal follows.
SUFFICIENCY OF THE EVIDENCE
            In her first two issues, Cunningham challenges the legal and factual sufficiency of the
evidence to support the jury’s finding that Appellees were not negligent as a result of their failure
to properly designate an expert witness on attorneys’ fees. Cunningham concedes that the legal
sufficiency issue has not been preserved for review. We overrule Point of Error One and turn now
to a factual sufficiency review. 
Standard of Review
            Where the party with the burden of proof is challenging the factual sufficiency of the
findings, the appropriate complaint is that the adverse findings are “against the great weight and
preponderance of the evidence.” Tate v. Tate, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.). 
In reviewing a factual sufficiency issue, we must consider and weigh all of the evidence in order to
determine if the adverse finding was so against the great weight and preponderance of the evidence
that it was clearly wrong and manifestly unjust. Dow Chemical Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001); Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc., 223 S.W.3d 1, 13
(Tex.App.--El Paso 2005, pet.denied), citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We
will not interfere with the fact finder’s resolution of conflicts or determine the weight or credibility
of the witnesses testimony because a fact finder’s determination of conflicting evidence is generally
regarded as conclusive. Tate, 55 S.W.3d at 5. 
 

Legal Malpractice 
            A legal malpractice action in Texas is based on negligence. Cosgrove v. Grimes, 774 S.W.2d
662, 664 (Tex. 1989). The elements of a legal malpractice claim are: (1) the existence of a duty, (2)
a breach of that duty, (3) the breach proximately caused the injury, and (4) damages resulting from
the injury. Id. at 665; see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development
and Research Corp., — S.W.3d —, 53 Tex.S.Ct.J. 77, 2009 WL 3494978 (Tex. Oct. 30, 2009).
When a legal malpractice claim arises from prior litigation, the plaintiff has the burden to prove that
“but for” the attorneys’ negligence, she would be entitled to judgment. MND Drilling Corp. v.
Lloyd, 866 S.W.2d 29, 31 (Tex.App.--Houston [14th Dist.] 1987, no writ). A lawyer is held to the
standard of care that would be exercised by a reasonably prudent attorney. Hall v. Rutherford, 911
S.W.2d 422, 424 (Tex.App.--San Antonio 1995, writ denied). The conduct of the attorney must be
evaluated based upon the information the attorney had at the time of the purported negligence. 
Cosgrove, 774 S.W.2d at 664. If an attorney makes a decision which a reasonably prudent attorney
could make in the same or similar circumstance, it is not an act of negligence, even if the result is
undesirable. Id. at 665. The standard is an objective exercise of professional judgment. Id.
            A party may request the following for any testifying expert:

            (1)       the expert’s name, address, and telephone number; 

            (2)       the subject matter on which the expert will testify; 

            (3)       the general substance of the expert’s mental impressions and opinions and a brief                         summary of the basis for them, or if the expert is not retained by, employed by, or                         otherwise subject to the control of the responding party, documents reflecting such                         information; 

            (4)       if the expert is retained by, employed by, or otherwise subject to the control of the                         responding party: 

                        (A)      all documents, tangible things, reports, models, or data compilations that have                                     been provided to, reviewed by, or prepared by or for the expert in anticipation                                     of the expert’s testimony; and 

                        (B)      the expert’s current resume and bibliography. 

Relevant Facts
            Daniel Sheehan, an expert on legal malpractice, testified that Appellees were not negligent
in designating Jordan as an expert on attorneys’ fees, that Appellees did not breach their duties
“either in the context of negligence or fiduciary duties,” and that a reasonable and prudent attorney
could have believed he had not erred. Sheehan further testified that the disclosure was sufficient
and that a reasonable and prudent attorney exercising ordinary care would have expected Jordan’s
testimony to be admitted 
            Rubarts testified that he was not negligent, that he was “in compliance with the rule” on
expert disclosures, that he did not breach his fiduciary duty to Cunningham, and that he properly
designated Jordan “the way [he] was taught” and “the way [he]’d always done it.” Rubarts testified
that he did not provide any documents to Jordan because he was planning to elicit expert testimony
at trial through hypothetical questions. 
            Jeff Smith testified as Cunningham’s expert. He opined that (1) Appellees’ designation of
Jordan did not comply with Rule 194, (2) Appellees were negligent; (3) the jury in the Classic
litigation would have awarded Cunningham attorneys’ fees, and (4) Appellees breached their
fiduciary duty by failing to disclose their mistake to Cunningham. Appellees characterize Smith as
having been discredited because of his admissions that:
            • his law license was suspended for six years because he stole $20,000 from a client;

            • he was found guilty of violating multiple Disciplinary Rules of Professional Conduct;

            • he was held in contempt of court after his license was reinstated;

            • he had been sanctioned two or three times;

            • he had failed to pay a court-ordered sanction and tried to discharge it in bankruptcy; and
 
• he was sanctioned $183,360.93 by a federal judge for suing a law firm “without legal and
factual support, in bad faith, vexatiously, wantonly, maliciously, frivolously and for improper
purposes.”


 

Analysis

            Cunningham had the burden to prove that “but for” Appellees’ negligence, she would have
recovered her attorneys’ fees. She presented expert testimony that Appellees did not comply with
Rule 194, and were negligent in their designation. Appellees elicited controverting evidence. 
            On appeal, Cunningham contends that Judge Stokes ruled as a matter of law that Judge Evans
did not abuse his discretion in excluding Jordan’s testimony. She then argues that “the question for
the jury was whether Appellees’ negligence proximately caused Cunningham damage.” From this,
she concludes that the jury was not entitled to ignore or overrule either judge. The problem with this
argument is, first and foremost, that the jury was not asked that question. Instead, Question No. 1
inquired:
Did the negligence, if any, of those named below proximately cause the occurrence
in question?
 
Negligence, when used with respect to the conduct of Hughes & Luce, L.L.P. and
Christopher Davis, means the failure to use ordinary care, that is, failing to do that
which an attorney of ordinary prudence would have done under the same or similar
circumstances or doing that which an attorney of ordinary prudence would not have
don under the same or similar circumstances.

Cunningham does not complain on appeal of charge error.


 Indeed, the question was submitted by
her attorney and he argued it at length during summation. The jury was specifically asked whether
the attorneys were negligent and if their negligence caused the injury. And the jury answered no.            Her argument fails for a second reason. Cunningham failed to object to defense testimony
that undercut Judge Stokes’ ruling, Her attorney asked Sheehan this question:
Question [by Mr. Pennington]: Well, would you agree that Mr. Rubarts and the
attorneys representing Mrs. Cunningham were negligent with respect to the
designation of attorney’s fees?
 
Answer [by Mr. Sheehan]: No.

During questioning by the defense, Sheehan addressed the subject again:
 
Question [by Mr. Prince]: So you are aware that Ms. Cunningham has claimed, no
big surprise, that Hughes & Luce and Mr. Davis committed legal malpractice and
breached their fiduciary duties to her?
 
Answer [by Mr. Sheehan]: Yes, I’m aware of that.
 
Q: Based on your review of the file, what are your opinions of those claims?
 
A: I don’t think they breached their duties either in the context of negligence or
fiduciaries.

No objection was lodged. Cunningham’s attorney then took it a step further:
 
Question [by Mr. Pennington]: Now you understand that Judge Evans who was the
judge in the underlying lawsuit, Judge Evans is the one who listened to what was
presented on the record and Judge Evans is the one who determined that Hughes &
Luce and Mr. Davis did not comply with Rule 194 and he refused to allow Mr.
Jordan to testify?
 
Answer [by Mr. Sheehan]: Yes, I know that.
 
Q: All right. And are you aware that another judge has reviewed Judge Evans’ ruling
and determined that the ruling was not an abuse of discretion?
 
A: Yes.
 
Q: And so that makes two judges now who have ruled the same way?
 
A: Well, I wouldn’t agree with that. Judge Evans ruled on whether there had been
sufficient compliance with Rule 194; that was the issue he was facing. The issue that
Judge Stokes later faced was, was his decision an abuse of discretion. Judge Stokes
reviewing [the] Rule 194 issue may have decided the opposite of Judge Evans. That
wasn’t the question before him.

Based on these questions, the trial court determined that Cunningham’s counsel had violated the
order in limine


 and that defense counsel would be able to question Sheehan as to whether Judge
Evans’ decision was erroneous. Sheehan’s answer was straight forward: “I think Judge Evans
improperly refused to permit Darrell Jordan to testify.”
            Appellees additionally argue that Cunningham wholly failed to establish that Classic or its
liability carrier would have settled for more than $1.2 million if the jury had awarded fees. Sheehan
testified that “the larger the verdict, the less your chance of settling” because “when a defendant
really gets popped they’re just not going to settle at all or they want to go to the appellate court.” In
short, Appellees contend that the jury was entitled to believe that Classic would have appealed rather
than settled had the verdict been $2 million ($1.5 million plus $500,000 in attorneys’ fees) for what
was in essence bad car repairs. 
            Whether Appellees failed to use ordinary care was an issue of fact for the jury. The adverse
finding was not so against the great weight and preponderance of the evidence that it was clearly
wrong or manifestly unjust. See Dow Chemical Co., 46 S.W.3d at 242. The jury chose to believe
Appellees’ witnesses and reject Cunningham’s claims. We will not interfere with the fact finder’s
resolution of conflicts or determine the weight or credibility of the witnesses testimony. See Tate,
55 S.W.3d at 5. Because the evidence was factually sufficient, we overrule Point of Error Two.
EVIDENTIARY ERROR
            In Point of Error Three, Cunningham contends that the trial court erred by admitting evidence
of prior litigation she initiated and evidence of prior criminal charges. Evidentiary matters are
committed to the trial court’s sound discretion. Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394,
396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any guiding rules
or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Stated differently, the appropriate
inquiry is whether the ruling was arbitrary or unreasonable. Smithson v. Cessna Aircraft Company,
665 S.W.2d 439, 443 (Tex. 1984); Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex.
1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not demonstrate that an
abuse of discretion has occurred. Southwestern Bell Telephone Co. v. Johnson, 389 S.W.2d 645, 648
(Tex. 1965); Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).
Evidence of Prior Litigation
            On cross-examination, Appellees asked Cunningham, “Do you think that you, you personally,
have ever done anything to contribute to the lawsuit problem we have in America?” Cunningham
objected that the question was irrelevant and a violation of Rule of Evidence 404. On appeal,
however, she complains that the trial court erred in requiring her to answer a “disparaging and
derogatory question.” See Falk & Mayfield L.L.P. v. Molzan, 974 S.W.2d 821, 824 (Tex.App.--Houston [14th Dist.] 1998, pet. denied). Because her objection at trial does not comport with her
challenge on appeal, this issue has not been preserved for review. Tex.R.App.P. 33.1.
            Next, Cunningham argues that the trial court erred by admitting evidence of prior litigation,
including two sexual harassment lawsuits and sanctions entered against her by a federal court. In
response, Appellees contend that her citations to the record relate only to questions about a particular
lawsuit in which she had sued a former employer, TCI Cable. We agree and limit our review to the
TCI Cable litigation and the sanctions issued in that case. 
            The legal malpractice lawsuit included a claim that Appellees violated the DTPA by charging
her an unconscionable fee, entering into an unfair contingency fee agreement, and urging her to settle
her claims against Classic without disclosing the problem with the expert designation. To prevail,
Cunningham had to show that Appellees took “advantage of [her] lack of knowledge, ability,
experience, or capacity . . . to a grossly unfair degree.” Tex.Bus.&Com.Code § 17.45(5). 
Appellees argued, and the trial court agreed, that her experience in the TCI lawsuit was directly
relevant to her “knowledge, ability, experience, [and] capacity” regarding contingency fee
agreements and settlements. The trial court commented that the “facts of the underlying case” might
not be relevant, but “the fact that . . . she’s been through litigation . . . would be relevant to this
issue.” The trial court limited the scope of the evidence to Cunningham’s experience with aspects
of the civil litigation system that were at issue in the trial, including contingency fee agreements and
settlements. The trial court did not permit questioning about the facts or details of the underlying
lawsuits. The trial court also prohibited Appellees from introducing pleadings from Cunningham’s
prior lawsuits. 
            We perceive no abuse of discretion. See Gee, 765 S.W.2d at 396. Given that Cunningham
filed a DTPA claim against Appellees and the trial court found that evidence of Cunningham’s
knowledge and previous litigation experience went directly to her claim, the trial court’s decision
was neither arbitrary nor unreasonable. See Smithson, 665 S.W.2d at 443.
Evidence of Criminal History
            Next, Cunningham complains that the trial court erred in admitting evidence about her
criminal past. She points to evidence of a prior arrest for failure to identify herself to a police officer,
the copy of the arrest warrant issued in connection with her arrest, and the charges against her for
writing forty-two hot checks. She contends that the evidence was irrelevant and in violation of Rules
404(b), 608(a) and (b), and 609. Appellees again counter that her arguments on appeal do not
comport with her objections at trial. Again, we must agree. Because her trial objection was limited
to Rule 404, our review will likewise be limited. Tex.R.App.P. 33.1.
            “Relevant evidence” is evidence having any tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable than it would
be without the evidence. Tex.R.Evid. 401. Rule 404 prohibits a party from injecting evidence of
other wrongs or acts to show that the witness acted in conformity therewith. Tex.R.Evid. 404(b). 
The evidence may be admissible for other purposes such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R.Evid. 404(b). 
            Appellees enumerate four reasons why the evidence was admissible: 
            •          Cunningham’s criminal history constituted a major portion of the underlying Classic
trial. During that trial, Cunningham testified about the arrests, charges, and
convictions. Therefore, this evidence was relevant to the malpractice case because
Cunningham was asking the jury to put themselves in the shoes of the Classic jury
in order to determine what they would have awarded in attorneys’ fees if Jordan had
been allowed to testify. 
 
            •          The evidence was relevant to multiple claims at issue. For example, Appellees
asserted an alternative claim for quantum meruit, seeking recovery for the
“compensable work” and “valuable services” they provided in the Classic case. 
Therefore, they were entitled to offer evidence that they overcame obstacles created
by Cunningham’s incomplete, evasive, and inaccurate information regarding her
criminal past. Appellees argue that they were required to do extra work to minimize
the negative consequences of that evidence in the Classic litigation. 
 
            •          The evidence was relevant to Cunningham’s breach of fiduciary duty claim and, in
particular, to her complaints regarding their recommendation to settle the Classic
lawsuit. Because her criminal history came out at trial, their recommendation to
quickly settle the vulnerable DTPA jury award was sound and in Cunningham’s best
interest. 
 
            •          The evidence was admissible to impeach Cunningham’s memory. Cunningham, at
various times, purported not to remember her criminal history. 
            We also emphasize that Cunningham failed to object to the introduction of trial transcripts
from the Classic litigation, including reference to the “failure to identify” and “hot check” charges. 
Not only did Cunningham’s attorney not object, he affirmatively stated that he had “no objection”. 
He also introduced exhibits reflecting these same charges. We conclude that the trial court did not
abuse its discretion. See Gee, 765 S.W.2d at 396. For these reasons, we overrule Point of Error
Three.
BATSON/EDMONSON CHALLENGES
            In Point of Error Four, Cunningham argues that the trial court erred in overruling her
Batson/Edmonson challenges to Appellees’ peremptory strikes of venire persons Eric Oliver and
Richard Askew. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the
United States Supreme Court held that the Due Process Clause of the 14th Amendment is violated
if prospective jurors are excluded from service in criminal trials on the basis of race or ethnicity. This
holding has been extended to civil cases. Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614,
111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). There, the court emphasized that “[r]acial discrimination
has no place in the courtroom, whether the proceeding is civil or criminal,” and that “courts must
entertain a challenge to a private litigant’s racially discriminatory use of peremptory challenges in
a civil trial.” Edmonson, 500 U.S. at 630, 111 S.Ct. at 2088. Texas adopted the Edmonson rationale
in Powers v. Palacios, 813 S.W.2d 489 (Tex. 1991).
Standard of Review
            We review a trial court’s ruling on an Edmonson challenge for abuse of discretion. Goode
v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). In the context of an Edmonson challenge, the abuse
of discretion standard is similar to the federal standard of “clearly erroneous.” Id.; cf. Hernandez
v. New York, 500 U.S. 352, 369 (1991)(under the “clearly erroneous” standard, a trial court’s finding
will not be disturbed unless the appellate court is “left with the definite and firm conviction that a
mistake ha[d] been committed”). A trial court’s decision on discriminatory intent is given “great
deference because a determination of the issue of purposeful discrimination depends on assessing
the credibility and the content of the striking party’s explanation and all other relevant facts and
circumstances.” Cain v. Pruett, 938 S.W.2d 152, 161 (Tex.App.--Dallas 1996, no writ).
Relevant Facts
            Eight of the first twenty five venire persons were African-Americans, as is Cunningham. 
Cunningham contends that Appellees challenged all eight for cause and then exercised three of their
six peremptory challenges to exclude those African-Americans who were not stricken for cause. 
Cunningham lodged a Batson challenge with regard to Eric Oliver and Richard Askew and Appellees
were given an opportunity to provide race-neutral explanations for the strikes. Appellees reminded
the court that both men had been challenged for cause, albeit unsuccessfully. Counsel then explained
Oliver was struck because he was favoring Cunningham before hearing any of the evidence. Askew
was struck because of his attitude toward attorneys, legal fees, his hostile demeanor, and his body
language. 
            The jurors were required to complete written questionnaires before voir dire began. Pertinent
to our discussion, Question 24 asked: 
Do you agree or disagree with each of the following statements? (Please check one
box for each statement). 
 
a. Being a lawyer is an honorable profession 

            b. Lawyers care about their clients
 
              c. Lawyers are honest.


              d. Clients are honest.
 
e.Lawyers make a positive contribution to
society.
 
f. In a case between a law firm and a former
client, I would lean toward or favor the former
client.
 
g. In a case between a law firm and a former
client, I would lean toward or favor the law
firm.
 
h. In general, fees that lawyers charge their
clients are fair.

▫Agree               ▫Disagree           ▫need more info 
 
▫Agree               ▫Disagree           ▫need more info 
 
▫Agree               ▫Disagree           ▫need more info 
 
▫Agree               ▫Disagree           ▫need more info 

 
▫Agree               ▫Disagree           ▫need more info 


 
▫Agree               ▫Disagree           ▫need more info 


 
▫Agree               ▫Disagree           ▫need more info 

 
▫Agree               ▫Disagree           ▫need more info 


Question 28 asked:
            Generally speaking, which of the following best describes your opinion of attorneys?
            ▫ Very favorable
            ▫ Favorable
            ▫ Unfavorable
            ▫ Very unfavorable
            ▫ No opinion

Venire Person Oliver

            The record reveals the following exchange between defense counsel and Oliver:
 
Question [by Ms. Blue]: Search your hearts and ask yourself, based on what I’ve
heard so far, I am favoring Ms. Cunningham? Or do you think that the lawyers have
done something wrong, that they were negligent based on what you’ve heard? Can
we have this side of the room go ahead and raise your card. Because it’s so important
that you say if you feel that way. Because what everybody in this room wants to
make sure is that you’re the right juror for this case. So based on what you’ve heard,
is anybody leaning toward Mrs. Cunningham’s side of the case?
 
Okay. Let’s go over here first. Anybody want to raise your card?
 
Okay. This side. Number 7. Thank you. God bless you. Thank you so much for
your honesty.

* * * * *
 
Yes. And Number 7, Mr. Oliver?
 
Answer [by Oliver]: Yes.
 
Q: And thank you so much. The same question. You have a prejudgment, I think
that’s the words that Mr. Pennington used. You have a prejudgment toward Ms.
Cunningham’s case and the fact that you already believe that the lawyers did
something wrong, correct?
 
A: From the information that’s been given thus far, yes.
 
Q: Okay. And that’s a good thing. That’s a good thing for you to tell us because if
you believe that, we just need to know that. If you started with a prejudgment
towards Ms. Cunningham’s case and you feel strongly about it, would that be a fair
statement?
 
A: With the information given, yes.
 
Q: Right. And no matter who asks you the question 20 different ways will your
answer be the same?
 
A: Unless I get more information, yes. 

* * * * *
 
Question [by Ms. Aldous]: You are Mr. Oliver, Juror Number 7?
 
Answer [by Oliver]: Yes.
 
Q: And what you’re saying, Mr. Oliver, is that before you hear any of the evidence
in this case, you have already decided you were going to give Ms. Cunningham a
head start; fair enough?
 
A: [Nods affirmatively].
 
Q: Did you get that, Your Honor? He said yes.

            The Court: I did not hear him.
 
A: Yes. 
* * * * *
 
Question [by Ms. Blue]: And so you’re just saying that you’ve already decided the
Plaintiff, you have a prejudgment toward the Plaintiff?
 
Answer [by Oliver]: I answered with the evidence that has been presented at this
point, yes. I’m open to any other evidence to be presented.
 
Q: Okay.
 
A: Yes.
 
Q: And understanding there wasn’t evidence presented, but what the law, what this
part of the trial is, is to figure out if you sit in the box, you have to just say, hey, I’m
equal for everybody. And knowing that Ms. Cunningham is suing a bunch a [sic]
lawyers, before you’ve heard any evidence, are you’re [sic] starting out with a
prejudgment toward the Plaintiff, which is good if you feel that way. And you do
feel that way?
 
A: Yes. 

* * * * *
 
Q: Okay. It says – just for the record, I’m looking at your questionnaire.
 
A: Uh-huh.
 
Q: And when you filled this out you certainly were honest and open, and so you’re
telling the Judge that in a case between a law firm and the former client I would lean
toward or favor the former client. And you said agreed.
 
A: Yes.
 
Q: Is that right?
 
A: Yes.
 
A: And that’s because you felt strongly about it, I assume?
 
Q: Yes. Correct. 

            Appellees struck Oliver because he repeatedly professed a bias in favor of Cunningham’s
case. While Cunningham argues that other potential jurors gave similar responses and were not
stricken, Appellees counter that she made no complaint of disparate treatment in the trial court. On
appeal, she points to venire members 13, 27, and 35, all of whom ended up on the jury and one of
whom believed a 40% contingency was too much. But no other panelist acknowledged – as Oliver
did – having a “prejudgment towards [Cunningham’s] case and . . . already believ[ing] that the
lawyers did something wrong.” None of the others stated that “before [they] hear[d] any of the
evidence in this case, [they] ha[d] already decided [they] were going to give [Cunningham] a head
start.” None of the others admitted they were “favoring the Plaintiff” and that “no matter who
ask[ed] [them], [they were] not going to change [their] mind[s].” Additionally, Oliver insisted that
Appellees’ alleged negligence in failing to submit an attorneys’ fee question to the jury “should not
be excused.” 
Vernire Person Askew
            Of all of the prospective jurors, Askew expressed the most unfavorable view of lawyers. He
disagreed with the notion (1) that the practice of law is an honorable profession, (2) that lawyers care
about their clients, (3) that attorneys are honest, and (4) that lawyers charge fair fees. He held an
“unfavorable” opinion of attorneys. He believed that attorneys should not “be let off the hook” for
failing to submit an attorney’s fees question to a jury because “they’re professionals [and] should
have known” that it would constitute negligence not to do so. Finally, Askew admitted that “[g]iven
[his] feelings about lawyers, and given the fact there’s a bunch of lawyers on one side, and an
individual on the other,” it would cause him to “pause a little bit.” 
            In the trial court, Cunningham alleged disparate treatment with regard to venire member
Bobby Golightley, whose juror questionnaire is included in the record. On appeal, she compares
Askew to Claire Lee, whose juror information is not contained in the record. From the voir dire we
can ascertain this much. Claire Lee disagreed that lawyers care about their clients and she also
expressed an unfavorable opinion of attorneys in general. Yet she believed that if a lawyer put
something unethical in a contract, but “he’s forthright and honest with the client that this is what he’s
going to do and the client agrees with that and accepts that as it stands and signs, then I think [the
contract] should be okay.” Lee agreed that “[a] client is responsible for their choices, decisions, and
actions.” We also note that Askew was Juror 24 while Lee was Juror 27. 
            The record supports race-neutral reasons for Appellees’ peremptory strikes against both
Oliver and Askew. We conclude that the trial court did not abuse its discretion in overruling
Cunningham’s Batson/Edmonson challenges. We thus overrule Point of Error Four. Having found
no error, we affirm the judgment of the trial court.

January 13, 2010                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.