**In the Interest of C.P.Y., a Minor Child.**

No. 05–10–00152–CV.

Court of Appeals of Texas, Dallas.

March 29, 2012.

Gabrielle H. Kickham, Brent E. Dyer, Looper, Reed & McGraw, P.C., Jonathan Neerman, Kyle Allen Owens, Hunton & Williams, L.L.P., Dallas, TX, for Appellant.

Rebecca J. Manuel, Jeffrey Robert Sandberg, Palmer & Manuel, LLP, Dallas, TX, for Appellee.

Before Justices LANG, MURPHY, and MYERS.

## OPINION

Opinion By Justice MURPHY.

The dispositive issue in this appeal is whether appellant Lisa Davis Wells had returned to work on a "full time basis," which would have terminated Lawrence Ray Youst's contractual alimony obligations under the parties' final divorce decree. Wells challenges the summary judg-

ment rendered in favor of Youst on that issue. We conclude the language is ambiguous and therefore reverse and remand the case.

## Background

Wells and Youst were divorced on February 24, 2005 pursuant to an agreed final divorce decree. Pursuant to a paragraph of that decree labeled *"Alimony,"* Youst agreed to pay alimony to Wells as follows:

> The parties agree as a matter of contract, and it is therefore, Ordered and Decreed that [Youst] is obligated to pay, and shall pay to [Wells], alimony of [$2,000.00] per month ... until the first month following the date of the earliest occurrence of one of the events specified below:
>
> 1. June 1, 2010;
> 2. Petitioner remarries;
> 3. Petitioner returns to work on a full time basis;
> 4. The death of [Wells]; or
> 5. Further order modifying the Alimony.

Wells and the parties' young son, C.P.Y., were living in Oklahoma at the time of the divorce. She and CPY moved back to Dallas in early 2006, and Wells took a job as a contract attorney. In June of 2008, Youst filed a petition to modify the parent-child relationship, seeking, among other things, an order enjoining Wells from moving to the Houston area with C.P.Y. and declaring his contractual alimony obligation terminated because Wells had "returned to work on a full-time basis." Wells responded with a counterclaim for $30,000 in past-due alimony based on Youst's failure to pay alimony after April 2007.

The parties filed cross-motions for partial summary judgment, and the trial court granted Youst's motion. In its December 8, 2008 summary-judgment order, the trial court denied relief to Wells, declared that Youst's contractual alimony obligations ceased as of May 15, 2006, and reserved "the right to determine the amount of reimbursement [Wells] owes [Youst] for alimony after such date."

Thereafter, Youst filed a supplemental petition seeking recovery of alimony payments made to Wells based on claims of money had and received, fraud, breach of contract, and promissory estoppel. After a bench trial on damages, the trial court rendered a final judgment awarding Youst $22,000 for alimony reimbursement and $13,500 in attorney's fees. Wells appealed, claiming in five issues the trial court erred by (1) granting summary judgment when issues exist as to the ambiguous phrase "full time basis," (2) granting summary-judgment relief not requested by either party, (3) awarding breach of contract damages against Wells when she had no obligations under the alimony provisions, and (4–5) accepting evidence supporting Youst's interpretation of the alimony provision at trial.[1] Because resolution of is-

---

1. The trial court proceedings are confusing, especially regarding the admission of evidence during the bench trial relating to the parties' interpretation of the phrase "full time basis" as used in the alimony provisions of the divorce decree. Youst argues that the trial court conducted a bench trial as to the meaning of the contractual term "full-time basis" in addition to the partial summary judgment on the issue. The trial court's summary judgment, however, reserved for trial only the question of reimbursement. The trial court never vacated the summary judgment order and in fact signed a final conclusion of law that the summary-judgment order was proper. Additionally, Youst's attorney made clear in opening statements that the only issue before the court for trial was "the alimony that was paid by [Youst], not owed by [Youst] per the Court's previous ruling ..." Accordingly, we address Well's first issue as to the propriety of the summary judgment.

sue one is dispositive of this appeal, we address that issue.

## Standard of Review

We apply a de novo standard of review to the summary judgment and the trial court's interpretation of the alimony provisions in the divorce decree. *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex.2011) (contract interpretation); *Texas Mun. Power Agency v. Pub. Util. Comm'n,* 253 S.W.3d 184, 192 (Tex.2007) (summary judgment). Summary judgment is appropriate only when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. TEX.R. CIV. P. 166a(c); *see also Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005).

## Discussion

Summary judgment in favor of Youst as to the contract language "full time basis" was proper if that provision was unambiguous and there were no disputed facts as to application of the provision in accordance with Youst's interpretation. Whether a contract is ambiguous is a question of law. *Milner v. Milner,* 361 S.W.3d 615, 619 (Tex.2012); *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). Youst asserts Wells's failure to raise ambiguity as an issue in the trial court waives her complaint on appeal. The parties' failure to raise ambiguity at the trial court, however, is not determinative. *Milner,* 361 S.W.3d at 419. We observe also that the parties in their summary-judgment arguments disputed whether Wells had returned to work on a full-time basis based on their respective interpretations of how the evidence of hours billed by Wells fit within that language.

█ Contract construction requires a court to determine the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 333 (Tex.2011). The court must consider the entire writing in an effort to harmonize and give effect to the provisions of the contract so that none will be rendered meaningless. *Id.*

█ We begin our analysis with the contract language. *Id.; see also Coker,* 650 S.W.2d at 393. If the language can be given a certain and definite meaning, the contract is not ambiguous and its construction is a matter for the court. *Milner,* 361 S.W.3d at 419; *Italian Cowboy Partners,* 341 S.W.3d at 333. If the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous and a fact issue exists as to the parties' intent. *Milner,* 361 S.W.3d at 419; *Coker,* 650 S.W.2d at 394. Summary judgment is thus improper as to an ambiguous contract. *Coker,* 650 S.W.2d at 394.

█ The language "full time basis" is not defined in the decree. The trial court also did not define the language in its order granting Youst's summary judgment. Although the parties disagree on the meaning of the language, conflicting interpretations alone do not establish ambiguity. *Milner,* 361 S.W.3d at 419. We are to give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows the terms to be used in a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex.2005); *RSR Corp. v. Siegmund,* 309 S.W.3d 686, 701 (Tex.App.-Dallas 2010, no pet.).

Wells argues that "full time basis" means working forty or more hours per week consistently and the summary-judgment evidence that she had exceeded an average of forty hours a week on three occasions since the beginning of 2007 did not end Youst's contractual alimony obli-

gations. Wells testified in her summary-judgment affidavit that, at the time the parties agreed to the contractual alimony, she was a contract attorney. As a contract attorney, she was paid only for the hours worked and her hours depended on the needs of the attorneys hiring her. Wells also submitted billing records for the period January 2007 to June 2008 that showed she worked an average of twenty-five hours per week; on three occasions during that time period, she met or exceeded forty-hour weeks.

Youst argues his contractual alimony obligations ended when Wells returned to work in early 2006, regardless of the number of hours she worked. He claims alternatively that Wells was working on a full-time basis beginning in August 2006, when she billed over forty hours per week. He asserts, citing section 408.042(h) of the Texas Labor Code, that "full time" means "at most" a forty-hour workweek. In his summary judgment affidavit, Youst testified that, in his "experience and belief" as an attorney in private practice for thirteen years, an attorney "must *work* for more hours than the hours he/she is actually able to *bill*." Youst thus argued that Wells's bills should be interpreted to mean that she necessarily worked more hours than she billed and the evidence established her full-time status in 2006.

There appears to be no common meaning of the term "full time," and the dictionary definitions do not expressly implicate the number of hours worked. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 919 (1981). The adjective "full-time" is defined as "employed for or involving full time"; "full time," the noun, is defined as "the amount of time considered the normal or standard amount for working during a given period." *Id.* Texas statutes use the term "full time" in different ways. For example, a full-time police officer is defined as a peace officer working "on average at least 32 hours per week, exclusive of paid vacation,"[2] a full-time assistant prosecutor is a person "normally scheduled to work at least 40 hours a week,"[3] and a full-time state employee is a person "required to work . . . not less than 40 hours a week."[4]

The phrase "full-time basis" is used in several Texas statutes and in the administrative code. For example, an "eligible employee" is defined in the Texas Insurance Code as an employee who works on a "full-time basis and who usually works at least 30 hours a week" and does not include an employee who "works on a part-time, temporary, seasonal, or substitute basis." TEX. INS.CODE ANN. art. 1501.002(3) (West 2009). The phrase in the Texas Administrative Code is defined variously as working "at least 20 hours per week for 40 weeks duration during a given year,"[5] "per week at least the average number of hours worked per week by all other em-

---

**2.** TEX. GOV'T CODE ANN. § 614.121 (West Supp. 2011) (defining full-time police officer as "a . . . peace officer . . . who: (A) works as a peace officer on average at least 32 hours per week, exclusive of paid vacation; and (B) is compensated by this state or a political subdivision of this state at least at the federal minimum wage and is entitled to all employee benefits offered to a peace officer by the state or political subdivision").

**3.** *Id.* at § 41.251(2) (West 2007) (defining a full-time employee as "an assistant prosecutor who is normally scheduled to work at least 40 hours a week as an assistant prosecutor").

**4.** *Id.* at § 658.001(1) (West 2004) (defining full-time state employee as "a person employed by a state agency who . . . is required to work for the agency not less than 40 hours a week").

**5.** 22 TEX. ADMIN. CODE §§ 163.11, 177.1(2), 185.4(d) (2011) (licensure by Texas Medical Board).

ployees,"[6] and "at least one-half time."[7] Youst cites section 408.042(h) of the labor code that defines a "full-time workweek" as forty hours. That definition, however, is part of the workers' compensation law that also defines employees with multiple employment. Under that code, a "part-time employee" means an employee who, at the time the compensable injury occurred, was working less than forty hours a week for a particular employer. TEX. LAB.CODE ANN. § 408.042(h)(3) (West Supp. 2011).

There appears to be no common definition of "full time," and the divorce decree is silent as to what the parties intended. Under Youst's interpretation, Wells's first week of billing forty hours implicated termination of the alimony provision. Wells argues that her return to work on a full-time basis has meaning only if the word "basis" is given meaning beyond a single forty-hour week. Under the labor code definition urged by Youst and under other Texas statutes, the term "full time" is used in conjunction with "employers" and "employees" and may include benefits such as vacation. The decree contains no other mention of employment on a "full time basis." The only other reference to "employment" is a requirement that Youst furnish health and dental insurance for the parties' child "through [his] employment." "Through employment" is defined to mean "through the party's employment or membership in a union, trade association, or other organization." This definition provides no further assistance in our attempt to harmonize all provisions of the decree to determine the parties' intent as to the disputed language.

In sum, the language in the divorce decree relating to Wells's return to work on a "full time basis" cannot be given a certain and definite meaning, and we cannot determine the true intentions of Youst and Wells from the expression in the writing itself. *Italian Cowboy Partners*, 341 S.W.3d at 333. We also conclude the language is susceptible to more than one reasonable interpretation. Accordingly, the contract is ambiguous, and a fact issue exists as to the parties' intent. *Milner*, 361 S.W.3d at 419; *Coker*, 650 S.W.2d at 394. The trial court therefore erred in granting summary judgment in favor of Youst, and the case must be remanded for a new trial. Our disposition of Wells's first issue resolves this appeal, and we do not address her remaining issues. *See* TEX.R.APP. P. 47.1.

### Conclusion

We sustain Wells's first issue. The trial court's judgment is reversed and this case is remanded for a new trial.

---

**6.**  28 *Id.* at § 34.706(8) (2006) (regulating persons who may sell, install, maintain, and service fire protection sprinkler systems).

**7.**  34 *Id.* at § 25.172(g)(2) (2011) (relating to the participation in the state optional retirement program of the Teacher Retirement System of Texas).