**REVERSE and REMAND; and Opinion Filed December 18, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01707-CV

## IN THE INTEREST OF L.T.H., R.R.H., AND A.W.H., MINOR CHILDREN

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-55534-06**

# OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

Appellant Brooke Harvey Robbins appeals from the trial court's final judgment that she take nothing in her post-divorce enforcement suit against Robert Harvey. Robbins contends that the trial court abused its discretion by refusing to enforce a 2007 Texas judgment that modified the parties' California divorce decree. Alternatively, Robbins contends that if the California decree could not be modified, the trial court abused its discretion by failing to enforce the California divorce decree. For the reasons that follow, we reverse and remand to the trial court for further proceedings.

## I. BACKGROUND

Brooke Harvey Robbins (Robbins) and Robert Harvey (Harvey) were divorced in the State of California on October 18, 2005, pursuant to a Judgment of Dissolution of Marriage which attached and incorporated a written stipulation for judgment and a written settlement agreement between the parties (the California Divorce Decree). At the time of their divorce,

Robbins and Harvey had three minor children. The California Divorce Decree required Harvey to pay Robbins $30,000 per month as family support. "Family support" included both child support and spousal support. Six months later, Robbins and Harvey modified their divorce decree, adding language to make the family support payment tax deductible. A reformed marital settlement agreement was attached to the reformed decree as an exhibit and adopted in its entirety as the order of the California court (the Reformed California Divorce Decree). The California court signed the Reformed California Divorce Decree on April 27, 2006. Robbins, Harvey, and their three children moved to Texas later that year.

In December 2006, Harvey filed a petition for divorce in Collin County District Court, Texas, alleging he and Robbins had entered into a common-law marriage on or about August 15, 2005. Robbins responded by registering both the original California Divorce Decree and the Reformed California Divorce Decree with the Collin County District Court under the provisions of the Uniform Interstate Family Support Act (UIFSA). She also filed an enforcement suit seeking payment of an arrearage of family support of $90,000. On May 10, 2007, Robbins and Harvey signed a mediated settlement agreement (MSA) in the Texas divorce proceeding. According to the provisions of the MSA, the parties agreed that no common-law marriage existed, and the MSA was intended to reform the California Divorce Decree, as modified by the Reformed California Divorce Decree. The MSA stipulated the amount of arrearage and established installment payments. Harvey agreed to pay $4,000 per month in spousal support for 36 months, and $6,000 per month thereafter, until Robbins's death or remarriage. He also agreed to pay $3,000 per month in child support, to be reduced by $1,000 per month as each child became emancipated. The MSA was then incorporated into an order titled "Final Decree," dated August 22, 2007 (the 2007 Texas judgment).

In 2008, Robbins filed a motion for enforcement of the child support order and spousal support order set forth in the 2007 Texas judgment. Harvey filed a general denial. After a bench trial, the trial court signed a final order awarding Robbins judgment for unpaid spousal support plus attorney's fees. In February 2010, Robbins filed another enforcement action, alleging Harvey was again behind in payment of child support and spousal support. The parties reached a Rule 11 agreement that spousal support payable by Harvey would not increase from $4,000 to $6,000 per month until January 1, 2011. This agreement was incorporated into an Agreed Temporary Order signed by the trial court on October 14, 2010. However, in January 2011, Harvey did not pay the increased spousal support as agreed, and stopped paying spousal support altogether. Robbins amended her pending enforcement action to reflect the increased amount of unpaid spousal support. Harvey's amended answer alleged the 2007 Texas judgment was void and the court lacked jurisdiction because there was no valid court order to enforce. He also alleged various affirmative defenses. The trial court conducted a bench trial on August 10, 2011. On August 17, 2011, the trial court signed a memorandum finding that Harvey's obligation to pay spousal support to Robbins terminated as of the date Robbins began cohabitating with another man.[1]

Robbins requested findings of fact and conclusions of law. She also filed a motion to reconsider the order terminating spousal support and a motion for new trial. Harvey filed a motion to enter judgment. On November 10, 2011, the trial court signed a final judgment that Robbins take nothing from Harvey. Robbins again requested findings of fact and conclusions of law. She also filed a notice of appeal. In January and February 2012, Robbins filed notices of past-due findings of fact and conclusions of law. On March 15, 2012, the trial court issued findings of fact and conclusions of law, concluding that it lacked subject matter jurisdiction to

---

[1] The trial court's memorandum stated "This Memorandum shall have the same force and effect as an Order."

modify the spousal maintenance provisions of the California Divorce Decree, that the MSA was unenforceable, that the 2007 Texas judgment was void, and that Harvey's obligation to pay Robbins spousal support terminated at the time Robbins began cohabitating with another man.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse of discretion standard. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.— Houston [1st Dist.] 2006, pet. denied). We review the trial court's construction of an unambiguous contract de novo. *In re C.P.Y.*, 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.); *Hidalgo v. Hidalgo*, No. 05-06-00966-CV, 2011 WL 1797621, at *2 (Tex. App.—Dallas May 10, 2011, no pet.).

## III. DISCUSSION

Robbins raises two issues on appeal. In her first issue, Robbins contends the trial court abused its discretion in refusing to enforce the 2007 Texas judgment. She presents five arguments in support of her first issue, asserting: (1) the 2007 Texas judgment requires payment of contractual alimony which is not subject to regulation under the Texas Family Code; (2) the trial court erred in concluding the 2007 Texas judgment was void because the trial court lacked subject matter jurisdiction to modify the California Divorce Decree; (3) the trial court erred in concluding Harvey's obligation to pay spousal support terminated when Robbins began cohabitating with another man; (4) the trial court erred in concluding that the 2007 Texas judgment was void because no Texas divorce was granted at that time; and (5) the trial court erred in concluding the MSA was unenforceable due to mistake or lack of consideration. In her second issue, Robbins argues in the alternative that if the California Divorce Decree could not be

–4–

modified, then the trial court abused its discretion by failing to enforce it and instead terminating the decree's family support obligations.

## A. CONTRACTUAL SPOUSAL SUPPORT

Chapter 8 of the family code, which governs spousal maintenance, does not apply to an alimony provision in a divorce decree that restates the parties' contractual agreement for spousal support. *Kee v. Kee*, 307 S.W.3d 812, 814 (Tex. App.—Dallas 2010, pet. denied) (citing *McCollough v. McCollough*, 212 S.W.3d 638, 648 (Tex. App.—Austin 2006, no pet.)). In this case, the Reformed California Divorce Decree adopted and incorporated the marital settlement agreement between Robbins and Harvey in which Harvey agreed to pay Robbins family support, which included child support and spousal support. "When such an agreement is executed by the parties and incorporated into the judgment of divorce, it is binding on the parties, and is interpreted under general contract law." *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.) (citations omitted). "The fact that a court expressly approves such an agreement and incorporates it into the final divorce decree does not transform contractual alimony payments into court-ordered maintenance payments subject to the termination and modification provisions of chapter 8 of the family code." *McCollough*, 212 S.W.3d at 648. We conclude that the agreement incident to divorce in this case is governed by contract law and not chapter 8 of the family code.

In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *See In re C.P.Y.*, 364 S.W.3d at 413. We consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam); *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.). If the agreement is susceptible to more than one reasonable interpretation,

it is ambiguous. *Carbona*, 266 S.W.3d at 680; *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied). If the agreement is not ambiguous, we will construe it as a matter of law. *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

The reformed marital settlement agreement adopted and incorporated into the Reformed California Divorce Decree expressly provided several options whereby the parties could modify the agreement:

> This Agreement may be modified by subsequent Agreement of the Parties only, by an instrument in writing signed by both of them, an oral agreement to the extent that the Parties execute it, or an in-court oral agreement made into an order by a court of competent jurisdiction.

Reformed Marital Settlement Agreement, Section XXIX. Thus, pursuant to the terms of the agreement, the parties could modify the contractual obligation of spousal support by signing a written agreement. A court order was not necessary to achieve a valid modification.

**B. MEDIATED SETTLEMENT AGREEMENT**

As discussed above, the Reformed California Divorce Decree authorized the parties to modify their marital settlement agreement by agreement of the parties only. Robbins and Harvey modified the family support obligations of the Reformed California Divorce Decree when they entered into the MSA, a written agreement signed by both parties. The MSA refers to Robbins as "Respondent," and Harvey as "Petitioner." The MSA states:

> Petitioner will pay tax deductible alimony to Respondent in the amount of $4,000 per month for 36 months beginning on June 1, 2007; after 36 months, alimony increases to 6,000 per month beginning June 1, 2010, and to continue until her death or remarriage . . . whichever occurs first. This agreement is intended to reform the parties' California agreement heretofore entered on or about 10-18-05, and amended on or about 2-28-06.

In interpreting an agreement, we attempt to determine the true intent of the parties as it is expressed in the agreement. *Coker*, 650 S.W.2d at 393. The express language of the MSA

reflects that Robbins and Harvey intended for the MSA to modify the family support obligations set forth in the parties' Reformed California Divorce Decree. We conclude the MSA was a valid and binding modification of the Reformed California Divorce Decree. The trial court erred by refusing to enforce the parties' agreed modification.

In its Findings of Fact and Conclusions of Law, the trial court concluded "the MSA is unenforceable because a mistake occurred with respect to a material term of the MSA and because of failure of consideration." Harvey argued, and the trial court agreed, that the mistake was the parties' belief that the trial court had the authority to modify the parties' Reformed California Divorce Decree. However, whether the trial court had authority to modify a California divorce decree was not a mistake of fact. "As with any other contract, absent consent of the parties, the provisions of the agreement will not be modified or set aside except for fraud, accident or mistake of fact." *Schwartz*, 247 S.W.3d at 806. Harvey made no allegation of fraud or accident. And the trial court's lack of subject matter jurisdiction to modify the California decree pursuant to section 159.211 of the family code was a mistake of law, not a mistake of fact. *See* TEX. FAM. CODE ANN. § 159.211(b) (West 2008) ("A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state.").

We further conclude there was no failure of consideration. Robbins agreed to accept a greatly reduced monthly payment of spousal support and child support in consideration for Harvey's promise to pay the spousal support and child support. Consideration is a bargained-for present exchange in return for a promise. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)). The trial court erred in concluding the MSA was unenforceable due to mistake of fact or failure of consideration.

## C. COHABITATION

Robbins asserts the trial court erred in concluding Harvey's obligation to pay spousal support terminated when Robbins began cohabitating with another man. At trial, Harvey argued his spousal support payment obligation should be terminated because Robbins was cohabitating with Gary Allen. In support of his position, Harvey relied upon chapter 8 of the family code, which provides for the cessation of spousal maintenance payments in the event of cohabitation. *See* TEX. FAM. CODE ANN. § 8.056(b) (West Supp. 2013). In its Conclusions of Law, the trial court concluded that "Harvey's obligation to pay Robbins spousal maintenance terminated at the time Robbins began cohabitating with Mr. Allen."

Robbins argues contractual alimony is not subject to termination for cohabitation under section 8.056 of the family code. Harvey's spousal support obligation arises out of the Reformed California Divorce Decree, as modified by the MSA; his obligation is not court-ordered spousal maintenance governed by chapter 8 of the family code. In the MSA, Robbins and Harvey agreed that Harvey would pay Robbins alimony in the amount of $4,000 per month for 36 months, and thereafter increasing to $6,000 per month, "to continue until her death or remarriage." Neither the Reformed California Divorce Decree nor the MSA provide that Harvey's spousal support obligation shall be terminated in the event of Robbins's cohabitation. Because the Reformed California Divorce Decree and the MSA were founded upon settlement agreements reached by the parties, the trial court had no power to supply terms, provisions, or conditions not previously agreed upon by the parties. *See Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *3 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) (citing *McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied)). In *Ammann*, the trial court considered John Ammann's motion to terminate his obligation to make spousal support payments because his ex-wife, Diane Ammann, was cohabitating with another person. *See*

*Ammann*, 2010 WL 4260955, at *3. In denying his motion, the trial court found that John Amman's spousal support obligation arose out of a Rule 11 Agreement signed by the parties and filed with the court, which agreement did not contain a provision terminating spousal support in the event of Diane Ammann's cohabitation. *Id.* On appeal, our sister Court affirmed, stating: "An agreed judgment based upon a settlement agreement, such as the divorce decree in the present case, must be in strict or literal compliance with the terms of that settlement agreement." *Id*.

Because the Reformed California Divorce Decree and the MSA do not provide that Harvey's spousal support obligation shall terminate in the event of Robbins's cohabitation, the trial court erred in concluding Harvey's obligation to pay Robbins spousal support terminated at the time Robbins began cohabitating with Mr. Allen.

### D. THE 2007 TEXAS JUDGMENT

Robbins argues the trial court erred in concluding the 2007 Texas judgment was void due to lack of subject matter jurisdiction. Our review of the record reflects the trial court did not conclude the 2007 Texas judgment was void due to lack of subject matter jurisdiction, but instead concluded it lacked "subject matter jurisdiction to modify the spousal maintenance provisions of the California Decree pursuant to section 159.211 of the Texas Family Code." Section 159.211 of the Texas Family Code prohibits a Texas court from modifying "a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state." *See* TEX. FAM. CODE ANN. § 159.211(b). However, as discussed above, the spousal support provision in the Reformed California Divorce Decree was contractual and not court-ordered spousal maintenance under California law. Thus, as with any other contract, absent fraud, accident, or mistake, the trial court did not have authority to modify or set aside the spousal support provisions absent consent of the parties. *See Schwartz*, 247

S.W.3d at 806. We do not address whether the trial court lacked subject matter jurisdiction to modify the spousal support provision in this case; instead, we merely conclude the trial court lacked authority to do so.

Robbins also asserts the trial court erred in concluding the 2007 Texas judgment was void because no Texas divorce was granted at the time. The 2007 Texas judgment appears to be the source of confusion to the parties and the trial court. There is nothing in the record to indicate why the 2007 Texas judgment was titled "Final Decree." Indeed, the record confirms that the parties agreed, and confirmed in writing in the MSA, that they had not entered into a common law marriage, and they were divorced in California on October 18, 2005. In the 2007 Texas judgment, which purports to incorporate the MSA, the trial court likewise found there was no common law marriage between the parties, and that the parties were divorced pursuant to Case No. 04D011133, Superior Court of the State of California, Orange County. Four years later, at the conclusion of a trial on Robbins's motion to enforce the spousal support obligations of the 2007 Texas judgment, the trial court signed a final judgment finding that Robbins should take nothing in her suit against Harvey. The final judgment was silent with respect to the 2007 Texas judgment. In March 2012, the trial court signed findings of fact and conclusions of law and concluded the 2007 Texas judgment was void because no marriage existed and no divorce was granted. Although we find nothing in the record to explain the basis for the trial court's conclusion, Robbins suggests the trial court reached this conclusion based on the general rule that any orders ancillary to a divorce proceeding are void if a divorce is not granted. *See Carter v. Carter*, 336 S.W.2d 466, 468 (Tex. Civ. App.—Austin 1960, no writ); *Pelham v. Sanders*, 290 S.W.2d 684, 688 (Tex. Civ. App.—Texarkana 1956, no writ). Robbins argues the 2007 Texas judgment was not intended to be ancillary to a Texas divorce. Instead, she contends it was intended to modify the Reformed California Divorce Decree and then to enforce it.

–10–

Notwithstanding Robbins's assumptions as to the intent of the trial court, because we have concluded that the MSA was a binding and enforceable modification of the Reformed California Divorce Decree, we need not address whether the 2007 Texas Judgment was void because it failed to grant a divorce.

**E. ENFORCEMENT OF THE CALIFORNIA DIVORCE DECREE**

Robbins argues, in the alternative, that if the California decree could not be modified, the trial court abused its discretion by failing to enforce it and instead, terminating the decree's family support obligation. In light of our conclusions with respect to Robbins's first issue, we need not address her alternative issue.

## IV. CONCLUSION

Based on our conclusions above, we reverse and remand to the trial court for further proceedings consistent with this opinion.

/David Lewis/
DAVID LEWIS
JUSTICE

111707F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF L.T.H., R.R.H., A.W.H., MINOR CHILDREN

No. 05-11-01707-CV

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-55534-06.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant, BROOKE HARVEY ROBBINS, recover her costs of this appeal from appellee, ROBERT HARVEY.

Judgment entered this 18th day of December, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE