

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ABEL LACHICA, | § | No. 08-21-00022-CV |
| Appellant, | § | Appeal from the |
| v. | § | 388th Judicial District Court |
| IRASEMA MEDINA, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2017DCM3579) |

## OPINION

Abel Lachica appeals the district court's order finalizing his divorce from Irasema Medina. We affirm.

### Factual and Procedural Background

Lachica and Medina married in September 1994 and had their first and only child together in August 2009. Throughout their marriage, Medina was the primary breadwinner, holding different professional roles in federal and state government.

On April 24, 2014—before the parties separated—they executed a notarized marital property agreement, in which they agreed to convert certain community property into Medina's separate property. Specifically, the parties agreed eight accounts would become Medina's separate property upon the execution of the agreement, including all rights, title, and interest in a federal

Thrift Savings Plan account, several Wells Fargo accounts, two life insurance policies, a Fidelity Roth IRA, and a federal employees' retirement system account. They also designated any future income and property derived from this newly partitioned separate property as Medina's separate property. The marital property agreement contained language stating, in all caps, each party had the opportunity to secure independent counsel to review the agreement on their behalf, understood by signing the agreement he or she "may be permanently surrendering claims he or she would otherwise have under Texas law to income or property derived from property of his or her spouse," and acknowledged he or she had been provided a disclosure of the other party's financial obligations and property before signing the agreement. It also contained a separate "warning" page, restating the cautionary language that the parties would permanently surrender rights he or she would otherwise have under Texas law. Lachica and Medina each signed this page signifying they read and understood the warning. The parties contemporaneously executed a voluntary waiver of disclosure, stating that prior to signing the marital property agreement, each party had received a copy of the agreement, read and understood the entire agreement, acquired adequate knowledge of the other spouse's existing property and financial obligations, and voluntarily waived his or her right to any further disclosure of existing property or financial obligations.

On the same day, the parties established the Lachica-Medina Revocable Trust, of which they were settlors and co-trustees. The trust provided that any property transferred to the trust would retain its character as either separate or community property. It also set forth estate-planning provisions for distributions of trust assets following each settlor's death. Upon establishing the trust, the parties assigned all of their tangible personal property to the trust. However, the trust did not provide for any other automatic funding, and no other funding documents were appended to the trust.

After the parties separated in 2016, they attempted to dispose of their marital issues by executing a settlement agreement on May 13, 2017, which they intended to be later incorporated into their final divorce decree. The settlement agreement set forth provisions related to child custody and visitation (not at issue here), as well as the division of real and personal property and shared debts.

Medina filed for divorce in May 2017. The district court held its first hearing in the case on September 17, 2018, in which it granted Medina's protective order for outstanding discovery and considered the applicability of the prior written agreements between the parties. Medina testified that she revoked her consent to the settlement agreement, and it no longer reflected the parties' current agreement. In its findings issued following the hearing, the court recognized both the Lachica-Medina Revocable Trust and the settlement agreement but found the two documents had "conflicting provisions regarding ownership of [Medina's] Thrift Savings Plan." Specifically, the court held Medina retained ownership of the Thrift Savings Plan under the trust, but the marital settlement agreement granted Lachica ownership of that account. The court ordered the trust was to control the division of marital assets, and the marital settlement agreement would have no effect so long as the trust remained in place.

Seeking clarification as to the 2014 marital property agreement—which was not mentioned in the court's September 21, 2018 order—Medina filed a motion for declaratory judgment in which she asked the court to declare the 2014 marital property agreement and its accompanying voluntary waiver of disclosure valid. The court held a hearing and granted the motion on May 16, 2019.

The first half of the final hearing was held on January 29, 2020 and included testimony from Medina's expert witness, Jennifer Coulter, as to the relationship among the three key documents at issue in this case: the trust, marital property agreement, and settlement agreement.

3

Coulter, an attorney specializing in estate planning and elder law, testified the trust was funded with only the parties' tangible personal property for two reasons: (1) as a matter of fact because neither Medina nor Lachica took the additional steps required to place other assets into the trust; and (2) as a matter of law because certain assets, including the Thrift Savings Plan and Roth IRA, cannot be owned by a revocable trust while the plan participant is still living. Medina and Lachica also testified at the hearing as to their property, liabilities, and issues regarding child custody and support.

The second half of the final hearing was held on October 21, 2020 and included additional testimony from Medina and Lachica. Lachica testified it was his understanding that "all of the [parties'] assets" were placed into the trust, so he was asking the court for "half of what's in that trust." When asked how the trust would operate if there were no assets placed in the trust, Lachica stated he "believe[d] that's where everything is" but agreed there would be nothing to divide between the parties if that were the case. However, Lachica testified if the court found the trust otherwise "does not stand," he would alternatively request a fifty percent division of the marital estate. He further confirmed he did not want the court to consider the settlement agreement in considering a just and right division of the marital estate and instead asked the court to consider "just the trust."

On November 18, 2020, the district court issued its findings and recommendations in support of the final divorce decree. Its findings included:

> 3. On April 24, 2014 the parties entered into the 'Lechica[sic]-Medina Revocable Trust' (the 'Trust' herein. On that same date they entered into the 'Postmarital Property Agreement' (the 'Partition Agreement['] herein) along with a 'Voluntary Waiver of Further Disclosure' related to the Agreement.

.          .          .

5. The Trust contains a provision for the inclusion of a specific list of tangible personal property (see 'Assignment of Property to Revocable Trust', which is attached to the Trust). There are no other references to specific assets in the Trust.

6. In order to be included in a trust, the asset must be specifically listed.

7. With respect to intangible assets (e.g., financial accounts), there are two broad categories: those which by law may be owned by a trust and those that may not be owned by a trust as a matter of law.

8. As to the first intangible asset class - those that may be owned by a trust - the underlying account must be closed and moved into an account that indicates that it is a trust account. The failure to change the character of the underlying accounts is fatal to their inclusion in a trust.

9. In the instant case the accounts that could have been transferred into the Trust were neither identified nor changed with the financial institution( s) in which they resided.

10. The types of intangible assets that cannot be owned by a trust as a matter of law include thrift savings plans, I.RA. accounts (including 'Roth' accounts) and Federal Employees' Retirement System Accounts ("FERS").

11. As noted, the parties entered into the Partition Agreement the very same day they executed the Trust.

12. Exhibit 'A' of the Partition Agreement divested 100% of the following intangible assets (along with related debt, if any) to the Petitioner:

> a. Thrift Savings account # 19549;
> b. Wells Fargo account #7351;
> c. Wells Fargo account #9403;
> d. Wells Fargo account #3192;
> e. Lincoln Benefit Life Insurance policy #5600;
> f. Fidelity Roth Individual Retirement Account #5586;
> g. Federal Employees Group Life Insurance Program; and
> h. 'all right, title and interest in and to the Federal Employees' Retirement System Account'. . . .

13. Of the assets set forth in Finding 12, the Thrift Savings account, Fidelity Roth Individual Retirement Account and the Federal Employees' Retirement System Account were not included in the Trust since they were not specifically enumerated therein and could not have been included as Trust assets as a matter of law even if they had been specifically listed to begin with.

14. None of the specifically enumerated Trust assets were included in the Partition Agreement nor were any of the specifically enumerated assets set forth in the Partition Agreement included in the Trust.

.                    .                    .

17. The assets listed in the Partition Agreement are confirmed as Petitioner's separate property by clear and convincing evidence.

The order again specifically confirmed Medina's separate property as set forth in the marital property agreement. After confirming Medina's separate property, the district court divided the parties' community property.

The parties' divorce decree was signed on December 21, 2020 and incorporated the above findings and recommendations. Lachica appealed.

### *Standard of Review*

We review an appeal of division-of-property issues in a divorce case for abuse of discretion. *Battle v. Battle*, 642 S.W.3d 140, 145 (Tex.App.—El Paso 2021, no pet.). When an appellant challenges the evidence supporting the district court's findings, we review a district court's findings of facts for legal or factual sufficiency of the evidence. *Howe v. Howe*, 551 S.W.3d 236, 249 (Tex.App.—El Paso 2018, no pet.)(citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

When the party without the burden of proof at the district court level raises a legal sufficiency challenge on appeal, as is the case here, the standard of review is "no evidence" to support the challenged finding of fact. *Tate v. Tate*, 55 S.W.3d 1, 4 (Tex.App.—El Paso 2000, no pet.)(quoting *Kimsey v. Kimsey*, 965 S.W.2d 690, 699–700 (Tex.App.—El Paso 1998, pet. denied)). Under this standard, we consider only evidence which tends to support the challenged finding and disregard all other evidence and inferences to the contrary. *Id.* (citing *Garza v. Alvia*, 395 S.W.2d 821, 823 (Tex. 1965)). "In every circumstance in which a reasonable trier of fact could

6

resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review." *Howe*, 551 S.W.3d at 250 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005)). We will sustain a legal sufficiency challenge if the record shows:

> (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.

*Wheeling v. Wheeling*, 546 S.W.3d 216, 223 (Tex.App.—El Paso 2017, no pet.)(citing *Wilson*, 168 S.W.3d at 810).

A factual insufficiency point raised by the party without the burden of proof on an issue "involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong." *Tate*, 55 S.W.3d at 5. If the burden of proof at the district court level is by clear and convincing evidence, as is the case here, we must apply a higher standard of factual sufficiency review. *Id.* (citing *In re B.R.*, 950 S.W.2d 113, 118–19 (Tex.App.—El Paso 1997, no pet.)). In doing so, we consider all of the evidence and determine whether the fact finder could reasonably conclude the existence of the challenged fact is highly probable. *Id.* at 119. We will sustain a factual insufficiency point only if the fact finder "could not have reasonably found the fact was established by clear and convincing evidence." *Id.* (citing cases). It is the trial court's role to determine witnesses' credibility and the weight their testimony carries. *Glenn v. Glenn*, No. 08-21-00059-CV, 2022 WL 3645070, at *4 (Tex.App.—El Paso Aug. 24, 2022, no pet. h.)(citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

Finally, in the "unique context" of family law, an appellant must also show that because of the challenged factual findings, the district court's decision on the issues of property division,

7

conservatorship, visitation, or child support was an abuse of discretion. *Howe*, 551 S.W.3d at 249. A district court abuses its discretion when it "acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Id.* at 250 (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).

*Analysis*

On appeal, Lachica contends the district court erred in concluding the eight accounts specified in the 2014 marital property agreement are Medina's separate property because he argues the marital property agreement was terminated when the parties signed the 2017 settlement agreement. He also complains the district court failed to render a just and right division of the community estate.

### A. The district court properly confirmed Medina's separate property.

Lachica maintains legally and factually insufficient evidence supported the district court's finding that certain intangible assets were Medina's separate property.[1] He claims when the parties signed the settlement agreement in 2017, that agreement effectively terminated the marital property agreement—even though the settlement agreement was later repudiated by both parties—and reverted Medina's previously converted separate property back to community property. Pointing to language in the marital property agreement stating that "[t]he Parties may modify or terminate this Agreement upon the mutual agreement of both Parties by written and acknowledged instrument" and relying on tenets of contract law, Lachica claims the parties acted in accordance with that provision to terminate the marital property agreement by executing the settlement

---

[1] Medina claims we cannot grant relief in Lachica's favor on this point because he failed to request affirmative relief on this theory at the district court level. However, Lachica raises the point of error as one of legal and factual insufficiency, which may be raised for the first time on appeal. TEX.R.APP.P. 33.1(d)("In a civil nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief.").

agreement. He also emphasizes the settlement agreement's merger clause, urging that this provision confirms the settlement agreement supersedes and terminates the parties' marital property agreement. Accordingly, he argues legally and factually insufficient evidence supported the district court's finding that the eight accounts designated as Medina's separate property in the marital property agreement remained her separate property under its terms. Finally, Lachica claims the testimony repudiating the settlement agreement did not "revive" the marital property agreement because once it was terminated, the parties had no further obligations under it and were no longer bound to its terms, such that the district court erred in enforcing the marital property agreement after it had been terminated.

In division-of-property cases, we begin with the presumption that all property in a dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a). This is a "rebuttable presumption, requiring a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence." *Tate*, 55 S.W.3d at 4 (citing TEX.FAM.CODE ANN. § 3.003(b)). Separate property is defined as all property owned before marriage, or acquired during marriage by gift, devise, or descent, whereas community property consists of all other property other than separate property acquired by either spouse during marriage. *Id.* §§ 3.001–.002.

However, Texas law is clear that a married couple can convert community property to separate property and vice versa. TEX.CONST. art. XVI, § 15 (defining separate property and permitting spouses to enter into partition and exchange agreements); TEX.FAM.CODE ANN. §§4.102 (providing spouses may agree to transfer community property to one spouse's separate property by a partition or exchange agreement); 4.202 (providing spouses may agree to convert separate property to community property). But strict formalities apply. *See* TEX.FAM.CODE ANN.

9

§§ 4.104 (requiring partition or exchange agreements converting community property to separate property to be in writing and signed by both parties); 4.203 (requiring agreements to convert separate property to community property to be in writing and signed by both spouses, identify the property being converted, and specify the property is being converted to the spouses' community property). Texas courts will refuse to enforce agreements that fail to meet these statutory requirements. *See Allen v. Allen*, No. 02-17-00031-CV, 2018 WL 547586, at *2 (Tex.App.—Fort Worth Jan. 25, 2018, no pet.)(mem. op.)(finding deed did not meet statutory requirements of agreement to convert separate property to community property because one spouse did not sign it and it did not specify the property was being converted to community property); *In re Estate of Cunningham*, 390 S.W.3d 685, 688 (Tex.App.—Dallas 2012, no pet.)(concluding agreement failed to comply with Family Code because, among other things, it did not state the spouses agreed to convert all or part of one spouse's separate property to community property).

To promote "amicable settlement of disputes[,]" Texas law also encourages divorcing spouses to enter into a settlement agreement in which they may mutually dispose of all division-of-property, liabilities, and spousal-maintenance issues. TEX.FAM.CODE ANN. § 7.006(a). So long as the court finds the terms of the agreement "just and right, those terms are binding on the court" in issuing the final divorce decree. *Id.* § 7.006(b). However, a settlement agreement "may be revised or repudiated before rendition of the divorce . . . unless the agreement is binding under another rule of law."[2] *Id.* § 7.006(a).

---

[2] For example, Texas Family Code Section 6.604 provides spouses may enter a settlement agreement on issues concerning the dissolution of marriage and the agreement will be binding if it: (1) designates in a prominently displayed statement that is in boldface type or capital letters or underlined that it is not subject to revocation; (2) is signed by each spouse; and (3) is signed by each spouse's attorney, if any, who must be present when the agreement is signed. TEX.FAM.CODE ANN. § 6.604(b); *see In re M.A.H.*, 365 S.W.3d 814, 819 (Tex.App.—Dallas 2012, no pet.)(finding agreement nonrevocable when it met the requirements of Section 6.604(b)). Neither party here argues their settlement agreement was binding under another rule of law such that it became irrevocable upon execution.

Here, the parties' marital property agreement met the requirements of Texas Family Code Sections 4.102 and 4.104 to convert community property to separate property: It was in writing and signed by both spouses. At the final hearing, both parties testified the marital property agreement had never been revoked. While the marital property agreement did permit the parties to modify or terminate that agreement, there is no support for Lachica's contention that merely signing a settlement agreement in anticipation of divorce—which was later repudiated by both parties—changed the character of previously converted separate property. Crucially, the settlement agreement did not meet the formality requirements of Section 4.203: It did not identify the property being converted or specify the property was being converted to the spouses' community property. *See id.* § 4.203. The settlement agreement also never specifically referred to any property as "separate" or "community" property nor stated it modified or revoked the marital property agreement. To the extent the settlement agreement characterized the parties' property at all, the only property it notes the parties owned together is the homestead.[3] Indeed, the settlement agreement refers to the Thrift Savings Plan and other intangible assets as "WIFE'S THRIFT SAVINGS PLAN AND BENEFITS[.]" In other words, there is nothing in the settlement agreement's language to suggest the parties intended to convert Medina's separate property to community property notwithstanding Section 4.203 formalities compliance. *Cf. Alonso v. Alvarez*, 409 S.W.3d 754, 758 (Tex.App.—San Antonio 2013, pet. denied)(holding trial court could have determined agreements converted separate property to community property even though

---

[3] For example, the settlement agreement states that besides the homestead, "Husband and Wife DO NOT jointly own any other real estate." It further states, among other things, the parties "DO NOT jointly own any household goods to be divided," "DO NOT jointly own any automobiles," "DO NOT jointly own any other personal property to be divided," and "DO NOT jointly hold any bank accounts."

11

agreements did not use the term "conversion" because, among other things, agreements identified subject property as "our" property and agreed to divide it in half).

In short, Lachica urges the settlement agreement is effective to terminate the marital property agreement but not effective to enforce as a settlement to divorce because both parties repudiated the agreement. Though Lachica cites ample caselaw for fundamental contract law principles, he cites no relevant case in support of his principal argument on appeal—*i.e.*, one standing for the principle that a repudiated settlement agreement can convert separate property to community property without otherwise complying with requisite statutory formalities. *See, e.g.*, *Matter of Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 124–25 (Tex. 2018)(enforcing no-contest clause in prenuptial agreement against ex-spouse who unsuccessfully sought rescission of the agreement); *In re L.T.H.*, 418 S.W.3d 876, 880–81 (Tex.App.—Dallas 2013, pet. denied)(concluding ex-spouse parties to a marital settlement agreement could modify terms for spousal support after divorce decree adopted and incorporated agreement by reference, including its terms permitting modification); *In re Marriage of Brogan*, No. 07-03-0081-CV, 2004 WL 1102373, at *4–5 (Tex.App.—Amarillo May 11, 2004, pet. denied)(mem. op.)(finding settlement agreement unenforceable because it failed to meet legal requirements and concluding it did not constitute a partition of community property because provisions indicated parties intended to execute the agreement incident to a divorce).

Finally, Lachica takes issue with the district court's September 2018 ruling in which it found an inconsistency between the revocable trust and the settlement agreement. However, this interlocutory order was clarified in later proceedings upon Medina's motion for declaratory judgment, and in the court's findings of fact accompanying the divorce decree, the court specifically found the revocable trust was valid but funded with only the parties' tangible personal

12

property. Ultimately, Lachica's argument at the district court appeared to hinge on a misunderstanding of which assets had been placed into the revocable trust. Though he now acknowledges the trust was never funded with any property beyond the parties' tangible personal property, that does not change his testimony asking the district court to consider "just the trust" and not take the settlement agreement into consideration, and confirming he voluntarily signed a "valid, enforceable" marital property agreement. In other words, there was no reason for the district court to address the settlement agreement in its findings of fact or final divorce decree because the parties both repudiated the agreement before the rendition of the divorce, and neither party asked the court to otherwise consider it in the final divorce decree.

Given the ample record evidence supporting the facts that the parties' marital property agreement is valid, the trust was not funded with assets besides the parties' tangible personal property, and the parties both repudiated the settlement agreement before the rendition of the divorce, we conclude factually and legally sufficient evidence supports the district court's finding that the assets listed in the parties' marital property agreement are Medina's separate property.

Issue One is overruled.

**B. The district court properly rendered a just and right division of the community estate.**

We now consider whether the district court's division of the community estate was just and right.[4] When a court issues a divorce decree, it must order a division of the parties' community

---

[4] We acknowledge Lachica's complaint on this point hinges on his preferred set of facts—*i.e.*, assuming we agreed with him that the eight accounts are not Medina's separate property but part of the community estate. Under that scenario, he argues the district court's division of the marital estate heavily favored Medina and accordingly challenges the division as not "just and right." *See* TEX.FAM.CODE ANN. § 7.001. Because Lachica has not presented an argument in the alternative, we still consider his contention as briefed.

Further, Medina contends in a footnote "Lachica should be estopped from challenging the judgment on appeal under the acceptance-of-benefits doctrine." However, she does not fully brief that argument, so we do not consider it here. *See* TEX.R.APP.P. 38.1(i), 38.2(a)(1); *Barrientos v. Jacobs Eng'g Grp.*, No. 13-20-00092-CV, 2021 WL 3411869, at

estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX.FAM.CODE ANN. § 7.001; *see Monroe v. Monroe*, 358 S.W.3d 711, 717 (Tex.App.—San Antonio 2011, pet. denied)("When a trial court divides the community estate, it must do so in a manner it deems just and right."). Courts look to several factors when dividing the estate, including the spouses':

> (1) relative earning capacity; (2) relative business opportunities; (3) relative health and physical conditions; (4) relative financial conditions; (5) relative ages; and (6) education; as well as (7) the size of their separate estates; (8) the nature of the property; and (9) benefits the party not at fault would have derived from continuation of the marriage; and (10) the probable need for future support.

*Glenn*, 2022 WL 3645070, at *4 (citing *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981)). A just distribution does not necessarily mean an equal distribution, and trial courts have "broad latitude" when determining what constitutes a just division. *Id.* (citing *Murff*, 615 S.W.2d at 698).

Because we agree with the district court's finding that the eight accounts specified in the marital property agreement are Medina's separate property, the community estate consisted entirely of one piece of real estate. The district court awarded Medina 100% of the right, title, and interest in that residence subject to a $63,600.00 payment to Lachica, which represented 65% of the net equity in the marital residence minus half the value of the parties' liabilities, and included an additional $10,000.00 as a personal property adjustment. That means the district court's division of the community estate in fact favored Lachica over Medina.

The trial court did not abuse its discretion in disproportionately distributing the community estate in Lachica's favor. While the record is not particularly comprehensive as to the *Murff* factors, the record reflects Lachica has a bachelor's degree but was working for a materials

*2 (Tex.App.—Corpus Christi–Edinburg Aug. 5, 2021, no pet.)(mem. op.)(declining to address issue raised in footnote and not adequately briefed).

company, making $11.85 per hour, and living with his mother during the final hearing. In contrast, Medina held several professional positions with federal and state government employers throughout the parties' marriage, which provided her with retirement benefits and the opportunity to provide health insurance for their child. The district court also confirmed Medina's considerable separate property while finding Lachica did not have separate property reflected in the final divorce decree. Given those collective considerations, it was not an abuse of discretion for the district court to award a greater portion of the marital estate to Lachica. *See, e.g.*, *Gordon v. Gordon*, No. 14-10-01031-CV, 2011 WL 5926723, at \*7 (Tex.App.—Houston [14th Dist.] Nov. 29, 2011, no pet.)(mem. op.)(approving of disproportionate award of community estate due to factors including disparity of parties' earning power and parties' respective abilities to support themselves, and citing cases finding the same).

Issue Two is overruled.

## **CONCLUSION**

Having overruled Lachica's issues, the judgment of the district court is affirmed.


YVONNE T. RODRIGUEZ, Chief Justice

November 2, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.